THOMAS D. HIGGINS *vs.* SARAH F. MYCROFT.

DECEMBER 5, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This action of assumpsit was brought under the common counts to recover on an alleged oral promise made by the defendant for a valuable consideration to pay the plaintiff a certain indebtedness of $2,000. The defendant filed two pleas, the general issue and the statute of frauds, and upon plaintiff's replication thereto the case

was tried before a justice of the superior court, jury trial having been waived, and resulted in a decision for the plaintiff. The case is before us on defendant's exception to such decision.

It is admitted that between April 27 and June 24, 1949 plaintiff had loaned defendant's husband a total of $2,000; that the latter signed and delivered to plaintiff a demand promissory note in that amount dated July 12, 1950; that the husband died on July 14, 1950 without paying this indebtedness or any part thereof; and that plaintiff and his attorney visited defendant shortly after her husband's death in an effort to collect such indebtedness from her. Certain other facts were admitted or not denied but they were incidental and had a bearing only as an aid in determining credibility.

There is a dispute, however, between the parties as to what happened at the time of the above-mentioned visit. The plaintiff testified in substance that he had known and trusted defendant's husband, who was in the carnival supply business; and that because of this friendship he had made four loans by checks, each for $500, totaling $2,000, to defendant's husband in reliance upon the latter's representations that he needed money to make payments on the interest and principal of a mortgage outstanding on a house in Warwick which belonged to him, that such house was worth at least $18,000 and had a mortgage of only $6,000, and that in addition to $10,000 in business accounts receivable he also had some $8,000 worth of carnival supplies in the cellar of his home.

He further testified that shortly after the husband's death he investigated the records in the city hall and learned for the first time that title to the house, which the husband had represented as his own, was actually recorded solely in the name of his wife; that thereupon he and his attorney visited defendant at the house and showed her the canceled checks endorsed by her husband and the note signed by him for $2,000; that defendant was intending to sell the

house through a broker who came to see her while they were present; and that she then and there "put her arm on my shoulder and told me not to worry; that she would take care of it if I didn't institute legal proceedings against the Estate of John Mycroft or her property there."

He also testified that, relying on her promise, he took no steps to institute probate proceedings, to collect the debt against her husband's estate; or to attach the property. Shortly thereafter when plaintiff received no payment and did not hear from defendant he again called on her and asked "about the payment of the money." At that time, according to him, defendant had completely changed her position and she not only refused to pay the money but also denied that during plaintiff's earlier visit she had promised to pay it. When she thus refused to carry out her previous promise the instant action was commenced.

The defendant on the other hand testified in substance that she had no knowledge of the loans, or of her husband's alleged representations, or of the purposes for which the money had been borrowed; that she always had worked at good wages until six or eight months before her husband's death; and that she herself had purchased the house, the title to which had always been in her name. She admitted that plaintiff and his attorney came to see her about her husband's debt of $2,000, but she asserted that they wanted her to sign a note or give a second mortgage on the house in that amount; that she refused to give such a note or mortgage; and that she had at no time promised that she would pay the amount to plaintiff if he would forbear from instituting probate or other legal proceedings against her husband's estate or against the property.

According to her the mortgage was not in arrears when such loans were made and she received no benefit from them. She admitted that plaintiff and his attorney notified her that a person named Lagasse probably owed her husband some $2,000 and also that a broker, who was to sell the house for her, had come to see her in that connection

while plaintiff and his attorney were present. But she explained that there never was a large amount of supplies in the cellar as indicated by plaintiff; that he and his attorney could have inspected the stock for themselves but did not do so; and that she was forced to sell all of it for some $25.

The trial justice gave the parties opportunity to present memoranda of the law and held the case for consideration. Later he filed a rescript in which he found in substance and effect that plaintiff's action was not a suit to recover payment of the debt of her husband; that it was brought on the alleged independent promise of defendant for a valuable consideration to pay plaintiff an equal amount of money if he would forbear from instituting certain legal proceedings, which he had a right to bring against the estate of her husband or against the property; that the case therefore was outside the statute of frauds; and that he was satisfied by a preponderance of the evidence that defendant had made such an independent promise. He thereupon decided for the plaintiff.

The defendant in support of her exception to that decision first contends substantially that the trial justice misconceived the nature of the action; that the evidence shows that plaintiff really was suing to recover on the debt of her husband; and that in the absence of a written agreement or memorandum signed by defendant, as required by the statute of frauds, a decision should have been rendered for her as a matter of law. This contention raises the question whether the trial justice erred in concluding from the pleadings and evidence that plaintiff's action was premised upon defendant's independent oral promise based upon a valuable consideration.

The declaration in the common counts is not inconsistent with plaintiff's contention. The evidence on the basic issue whether defendant in fact made an independent agreement for consideration as stated by plaintiff is conflicting. The plaintiff testified that defendant expressly promised to pay

the $2,000 in consideration of his forbearance from instituting certain legal proceedings but defendant denied any such promise. It also appears without contradiction that she alone would share in her husband's estate, if any, as there were no children; that he died admittedly leaving some business assets including a probable claim for $2,000 against a person named Lagasse, of which she was aware; and that her husband had obtained the loans on his representation that he owned the house and a large supply of merchandise therein. Moreover it appears in evidence that following her husband's death defendant intended to sell the house; that she had consulted a broker for that purpose; and that the latter had called on her while plaintiff and his attorney were present.

In these circumstances plaintiff as a creditor of the husband had the right to institute probate proceedings on the latter's estate and also could have attached his interest in the house, thus challenging and encumbering the title which was recorded in defendant's name. Such proceedings, if instituted by plaintiff, at least would have interfered with defendant's present ability to convey a marketable title to the property on a prospective sale in which she alone would be the beneficiary. Whether he might or might not succeed therein is beside the point. He had a right to litigate the issue and his forbearance from beginning such proceedings in the circumstances could result in a benefit to defendant.

The plaintiff's testimony, if weighed against the background of circumstances appearing in evidence, is not inherently improbable or inconsistent. That testimony was believed by the trial justice who saw and heard the parties as they testified. From an examination of the record alone, we cannot say that he erred as a matter of law in concluding that the action was brought to recover on defendant's independent promise to pay the amount of $2,000 based on a valid consideration of plaintiff's forbear-

ance from instituting certain above-mentioned legal proceedings.

But defendant further contends in effect that in no event could the evidence here be found to preponderate in favor of plaintiff because the mere failure of his attorney to testify *required* the trial justice as a matter of law to infer that such testimony would not be favorable to plaintiff. According to her view, the evidence if thus considered would preponderate in favor of defendant rather than plaintiff, or at least it would be no more than evenly balanced so that a decision for defendant was bound to result as a matter of law since plaintiff had not sustained the burden of proof.

In our opinion defendant's argument either misconceives or overstates the applicable law of evidence. While the failure of a party to call such a material witness may warrant the drawing of an adverse inference therefrom, defendant cites no case and we have found none which holds that this circumstance alone compels or requires that such an inference be made as a matter of law.

In other words the failure to produce an available material witness to testify may be considered as a circumstance, but the inference to be drawn and the weight to be given thereto is ultimately for the trier of facts to determine upon a consideration of all the evidence. The cases in this state have consistently followed this pattern whether applied to a party or a witness. See *Huebel* v. *Baldwin*, 45 R. I. 40; *Letts* v. *Holgate*, 53 R. I. 198; *Kerr* v. *McKenna*, 57 R. I. 252; *Misch* v. *Montgomery*, 61 R. I. 345; *Black* v. *Child's Co. of Providence*, 73 R. I. 516. None of these cases holds that a trier of facts is compelled as a matter of law to draw an unfavorable inference from a party's mere failure to produce a material witness. For a general discussion of this point, see annotation 135 A.L.R. 1375 *et seq.*

In the instant case the trial justice did not overlook the failure of plaintiff's attorney to testify. Indeed in his rescript he discussed that fact in the light of the evidence

and other circumstances appearing in the transcript. He pointed out, in substance and effect, that under the pertinent law he was entitled to consider such failure and was permitted to draw therefrom an inference adverse to the plaintiff, but that he was not compelled to do so as a matter of law. Accordingly, after considering all the evidence and special circumstances he concluded, as stated in his rescript, that he was favorably impressed by the plaintiff; that he was not impressed by the defendant; that he believed plaintiff's testimony which he expressly characterized as natural and convincing; and that he was satisfied, by a preponderance of such evidence, that defendant had made the independent agreement as alleged.

Unless we hold, which we do not, that he was compelled as a matter of law to draw an adverse inference from the mere failure of plaintiff's attorney to testify, we cannot say from the record alone that the trial justice was clearly wrong in concluding that the evidence preponderated in favor of the plaintiff.

The defendant's exception is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Joseph T. Witherow,* for plaintiff.

*Donald O. Burke,* for defendant.