THE PHILIP CAREY MANUFACTURING COMPANY *vs.*
GENERAL PRODUCTS COMPANY.

MAY 27, 1959.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

138

PAOLINO, J. This is an action of assumpsit for breach of contract. It was tried before a justice of the superior court sitting with a jury and resulted in a verdict for the plaintiff in the sum of $28,948.32. The case is before us on the defendant's bill of exceptions to the denial of its motion for a directed verdict, to rulings granting the plaintiff's motions for a directed verdict on two counterclaims filed by the defendant, to a ruling denying the defendant's motions to submit to the jury its requests for two special verdicts, to the denial of certain instructions requested by the defendant, and to certain portions of the charge to the jury.

The declaration is in two counts. The first count alleges in substance that the parties entered into a contract on July 9, 1953, whereby plaintiff agreed to purchase from defendant 19,487 medicine cabinets, represented by defendant to be in its possession, at a price of $8 per cabinet; that

at no additional cost the cabinets were to be stored by defendant in its warehouse and were to be shipped on plaintiff's order; that payment for such cabinets was to be made by plaintiff in six monthly installments beginning in July 1953; that plaintiff paid for the cabinets within such time; that thereafter it ordered out a certain number of the cabinets which defendant shipped accordingly; and that defendant failed to deliver the balance of 3,271 cabinets on plaintiff's order, by reason of which defendant was indebted to plaintiff in an amount equal to the purchase price paid by plaintiff for the 3,271 cabinets. The second count contains certain of the common counts.

In addition to the plea of the general issue defendant filed two special pleas, the first alleging that the cabinets were held at plaintiff's risk and the second alleging that defendant is and has been ready, able, and willing to deliver the balance of the cabinets. The defendant also filed two counterclaims. Thereafter plaintiff filed replications to the special pleas and pleas to the counterclaims.

Although defendant has filed numerous exceptions we shall consider only those which it has briefed or argued. Accordingly we shall only refer to such portions of the record as are pertinent to the issues raised by these exceptions.

The plaintiff is a manufacturer of steel medicine cabinets. The defendant is in the plastics business. In 1952, after prior negotiations, the parties entered into an agreement for the manufacture by defendant of plastic medicine cabinets to be sold to plaintiff. The agreement consisted of a purchase order dated January 11, 1952 signed and sent by plaintiff to defendant and the latter's letter of acceptance dated January 14, 1952. For the purposes of this discussion we shall accept defendant's interpretation of this agreement. The defendant claims that such agreement was a contract for the purchase of 25,000 cabinets in six months at $9 each and that it required plaintiff to order the same shipped out within such time at said price, to be paid for

"1/10-net 30." The agreement contained warranties relating to materials and workmanship. It provided that defendant was not to sell the cabinets which were covered by plaintiff's order to anyone except one other outlet for a period of six months after initial production shipments were made.

It appears from the evidence that plaintiff encountered certain difficulties in marketing the cabinets which it claimed were due in part to faulty construction, inadequate packaging and price. This situation resulted in plaintiff ordering shipped out from defendant's warehouse only about 5,500 cabinets in the period of approximately one and a half years from the date of the agreement. The defendant was disappointed at the scarcity of orders and in the latter part of 1952 the parties began to confer in person and by correspondence for the purpose of arriving at a mutually satisfactory solution of their difficulties. There is no doubt that thereafter the parties made serious efforts for their mutual benefit to solve these problems. In the correspondence and at the conferences they discussed mainly the questions of production and packaging improvement, storage arrangements, and insurance, price and method of payment. Throughout these discussions defendant represented to plaintiff that it had manufactured 25,000 cabinets in accordance with the January 1952 agreement and that it had in inventory 19,487 cabinets at the time these negotiations were being carried on.

Finally, on July 3, 1953, as a result of the aforesaid negotiations, plaintiff wrote to defendant stating in substance that it accepted the following proposals which the parties had theretofore discussed at a conference held at defendant's office on June 23, 1953: A price reduction from $9 to $8 per cabinet for the 19,487 cabinets represented by defendant to be in inventory; assumption by plaintiff of insurance charges covering said cabinets; warehousing of the same by defendant at no cost to plaintiff; insertion by de-

fendant of additional packing in each carton in inventory; payment by plaintiff for the 19,487 cabinets in six equal monthly payments beginning in July 1953; and continued warehousing and shipping after 1953 at no cost to plaintiff, if plaintiff had not sold all of the cabinets by the end of 1953.

On July 9, 1953 defendant wrote to plaintiff acknowledging receipt of the July 3 letter and accepting the proposals contained therein. Thereafter plaintiff made the monthly payments required by said contract and paid in full for the 19,487 cabinets which defendant had represented to be in inventory. It also appears that in July 1953 plaintiff covered the cabinets in question by insurance.

Following the exchange of letters in July 1953 plaintiff continued its efforts to market the cabinets and disposed of certain quantities from time to time. Finally, in the early part of 1956, plaintiff sold to Anthony Dumas for $32,000 the balance of 11,416 cabinets which, according to the representations made by defendant, were supposed to be in defendant's warehouse. These representations were based on defendant's sworn statements of physical inventories taken by it at various times. During the period from February 1956 to June 5, 1956 defendant shipped a quantity of cabinets in response to orders by plaintiff on behalf of Anthony Dumas. It appears that Mr. Dumas had sold the 11,416 cabinets to another purchaser. But on June 5, 1956 defendant was unable to deliver the balance of 3,271 cabinets which should have been in its warehouse, but in fact were not there.

The defendant acknowledged the shortage but was unable to explain it. However, it offered to replace the cabinets and informed plaintiff that it could do so within two or three weeks if plaintiff would furnish certain quantities of mirrors and cartons. On the other hand, if plaintiff would not furnish these, defendant stated it would procure them, and in that event it would be a matter of thirty days or so

before shipment could be made. The plaintiff notified defendant that it would not accept any replacements since its customer had cancelled the contract with plaintiff. The parties failed to get together and subsequently plaintiff commenced the instant action.

Under point I, which is based on defendant's exception 7, it contends that the trial justice erred in denying the motion for a directed verdict. The defendant argues that the evidence fails to disclose that a binding contract was entered into in July 1953, as alleged in the declaration. In substance it claims that under the January 1952 agreement plaintiff was legally bound to perform all the promises which it undertook in the July 1953 arrangement; that consequently no legal consideration moved from plaintiff to defendant under said arrangement; that, lacking legal consideration, no binding or enforceable contract resulted from the July 1953 correspondence; and that therefore a verdict should have been directed for defendant.

We do not agree with this contention. Whatever may have been the obligations of the parties under the 1952 agreement, they clearly waived their rights thereunder and entered into a new contract. Hereafter this will sometimes be referred to as the 1953 contract. It is clear from the evidence that the difficulties encountered by plaintiff under the 1952 agreement resulted in part from faulty construction and inadequate packaging. The defendant acknowledged this and got together with plaintiff to correct the situation. The defendant, on the other hand, was vitally interested in creating a public demand for plastic cabinets and it suffered a financial hardship from plaintiff's alleged failure to withdraw the cabinets within six months.

Both parties forbore whatever legal claims they may have had against each other under said agreement and compromised their differences for their mutual benefit, each giving up rights which it claimed it had and each receiving bene-

fits to which it may not have been entitled. This forbearance on the part of each was valid consideration to support the promises made in the July 1953 correspondence and resulted in a novation which extinguished the 1952 agreement. Both parties clearly assented to the new obligations. The adequacy of the consideration is not material. *Salvas v. Jussaume,* 50 R. I. 75.

As was said in *Bicknall* v. *Bicknall,* 27 R. I. 429, at page 430: "Novation is the substitution of a new obligation for an old one which is thereby extinguished. * * * Since novation is the extinguishment of one obligation and the foundation of another, it requires the assent of all the parties to both the old and the new obligations; for unless all the parties to the old assent, it can not be extinguished, and unless all the parties to the new assent, it can not be created."

On the issue of whether there was legal consideration to support the 1953 contract, the facts are not in dispute and therefore there was no issue to submit to the jury in respect thereto. Whether there was consideration was therefore a question of law. In our opinion the trial justice did not err in denying defendant's motion for a directed verdict. Exception 7 is overruled.

Under point II, which relates to exceptions 23, 24, 25, 26, 27 and 29, defendant contends that the trial justice erred in instructing the jury in substance that the 1953 contract cancelled and rescinded the 1952 agreement and was the only contract which the jury could consider. From our determination of exception 7 under point I above, it is clear that the novation of July 1953 superseded and extinguished the January 1952 agreement. The trial justice did not err in so instructing the jury. These exceptions are overruled.

Under point III, which is based on exception 8, defendant contends that the trial justice erred in granting plaintiff's motion for a directed verdict on defendant's first counterclaim. Such counterclaim alleges in substance that de-

fendant agreed to manufacture and sell and plaintiff agreed to purchase 25,000 plastic medicine cabinets and to pay $9 per cabinet; that after plaintiff had received part of the order, it represented to defendant that if defendant would reduce the price to $8 per cabinet it would dispose of the remaining 19,487 cabinets at a reasonable price and would thereby create a general market for them; that defendant reduced the price by $1 per cabinet; that plaintiff paid for the cabinets at the reduced price; and that plaintiff disregarded its promises and sold the cabinets as distress merchandise at a price far below the manufacturing cost and thereby destroyed the market.

We have already held that the only contract in force between the parties was the 1953 novation. Under the parol evidence rule, that contract cannot be changed by evidence of negotiations between the parties prior to the time it became effective. *Quinn* v. *Bernat,* 80 R. I. 375. Moreover, the parol evidence rule is a rule of substantive law and not merely a rule of evidence and any evidence violative of such rule, even though admitted without objection, will not be considered. *Allen* v. *Marciano,* 79 R. I. 98.

The counterclaim is based on defendant's allegation that plaintiff promised to resell the cabinets at a "reasonable price." However, the July 1953 contract contains no such promise, nor is there any language therein from which such a promise could reasonably be inferred or implied. Therefore there is no basis for the counterclaim and no evidence to support such an allegation. The trial justice did not err in granting plaintiff's motion for a directed verdict on the first counterclaim. Exception 8 is overruled.

Under point IV, which relates to exception 9, defendant contends that the trial justice erred in directing the jury to return a verdict for plaintiff on defendant's second counterclaim. It bases such counterclaim on the 1952 agreement and alleges in substance a violation thereof on the ground that plaintiff failed to take delivery of the cabinets

within a reasonable time compelling defendant to use valuable space for storage. The defendant claims it is entitled to a reasonable compensation for such storage charges on the basis of an implied promise.

Assuming without deciding that such ruling was error, it is clear that defendant was not prejudiced thereby. The 1953 contract provided that if plaintiff had not sold all of the 19,487 cabinets by the end of 1953 defendant would continue to warehouse and ship the same at no extra cost to plaintiff. The trial justice instructed the jury that it was their duty to determine whether the contract as written gave plaintiff a right to free storage for an indefinite period of time, or whether the contract meant that plaintiff was entitled to free storage for only a reasonable period of time after 1953.

The jury were also instructed that if they found the contract meant that such cabinets were to be stored at no cost for only a reasonable period of time after 1953, it was for them to determine whether a reasonable time had elapsed. Furthermore, if they found a reasonable time had elapsed, they were instructed that it was their duty to award defendant an amount for storage charges by way of recoupment against whatever verdict they might award plaintiff. It is clear from the amount of the verdict that the jury followed such instructions and awarded an amount for storage charges which it allowed defendant to recoup. In our opinion, therefore, defendant was not prejudiced by such ruling. Exception 9 is overruled.

Under points V and VI defendant contends that the trial justice erred in certain rulings and instructions. Exceptions 14, 15, 16 and 20 thereunder are based on the refusal of the trial justice to instruct the jury in substance that if defendant offered to replace the missing cabinets within a reasonable time after discovery of the shortage, or if it did replace the same within such time, their verdict should be for defendant. Exceptions 21 and 22 thereunder relate

to the refusal to grant defendant's request for special findings based on such instructions. Exceptions 32 thereunder is based on defendant's contention that the trial justice erred in instructing the jury that this case should be decided as of the time of the discovery of the shortage and that whatever defendant did thereafter in the way of making up cabinets was of no importance. These exceptions raise the same basic question of law and we shall therefore treat them together.

In our opinion the rulings in question were not erroneous. The 1953 contract was based largely on defendant's representations that it had 19,487 cabinets in inventory. The plaintiff, relying on such representations, agreed to pay for the same within six months after such contract became effective. By its terms defendant in effect agreed to deliver the cabinets whenever plaintiff ordered them shipped. The plaintiff performed its part of the agreement by making payment in full in accordance with its promise. This was a substantial performance on its part and, having so performed, it was entitled thereafter to delivery of the cabinets whenever it ordered them to be shipped. The defendant's obligation under the contract was to have them on hand and ready to deliver. However, in June 1956 defendant failed to deliver the cabinets after plaintiff ordered them. In fact it could not deliver them because it did not have them. This was a material breach of the contract in so far as the 3,271 cabinets in question are concerned and plaintiff was under no obligation to accept defendant's offer of a replacement at a later date. *King Philip Mills* v. *Samuel Slater & Sons,* 12 R. I. 82.

With respect to the cabinets in question there was neither full performance nor substantial performance on the part of defendant. In fact there was a complete failure on its part to live up to the terms of its contract. In such circumstances defendant's offer to replace them after the breach was immaterial. The trial justice's instructions on this is-

sue were not in error and his refusal to charge as requested was correct. Exceptions 14, 15, 16, 20 and 32 are overruled.

Since these issues were immaterial and therefore not submitted to the jury, the requests for special findings thereon were properly denied. General laws 1956, §9-20-3. *Connolly* v. *Seitman,* 64 R. I. 29. Exceptions 21 and 22 are overruled.

Under point VII, which relates to exception 17, defendant contends that the trial justice erred in refusing to charge the jury that if it found the risk of loss was on plaintiff with respect to the cabinets, plaintiff could not recover in this action. We cannot agree with this contention. Assuming that the cabinets were manufactured and stored pursuant to defendant's representations, that title had passed to plaintiff and that they were stored by defendant at plaintiff's risk with storage charges due as claimed by defendant, it is clear that defendant would be a bailee for hire.

It is well settled in this state that when goods are lost while in the possession of a bailee there is a presumption that the bailee is at fault. *Dufresne* v. *Dick,* 51 R. I. 135; *Starita* v. *Campbell,* 72 R. I. 405. Since defendant has introduced no evidence to rebut such presumption, it is liable for such loss even though we assume that title had passed to plaintiff and that the risk of loss was on plaintiff. 2 Williston, Sales (rev. ed.), §301, p. 214. In such circumstances plaintiff can sue in assumpsit or in contract, as well as in tort, for defendant's failure to make delivery. *Hanlon* v. *J. E. Miller Transfer & Storage Co.,* 149 Ohio St. 387. Exception 17 is overruled.

Under point VIII, which is based on exception 19, defendant contends that the trial justice erred in refusing to instruct the jury that if plaintiff rescinded the 1953 contract, it cannot recover against defendant in this action unless it offered to return all merchandise received by it thereunder. The defendant's point IX relates to exceptions 18,

28 and 30. Under exception 18 defendant contends that the trial justice erred in refusing to instruct the jury that if plaintiff were entitled to recover, the amount of recovery should be the fair market value of the missing cabinets in the summer of 1956. Exceptions 28 and 30 are based on defendant's contention that the trial justice erred in instructing the jury that if plaintiff were entitled to recover, it was entitled to recover $8 per cabinet for the 3,271 cabinets. These exceptions raise the same basic question of law and we shall therefore treat them together.

If we proceed on the theory that with respect to the 3,271 cabinets there has been a total failure of consideration, plaintiff would clearly have the right to rescind the contract and sue for recovery of the purchase price in an action of assumpsit for money had and received. See *Wartell* v. *Novograd*, 48 R. I. 296; *Evangelista* v. *Antonio De Cubellis, Inc.*, 79 R. I. 142. See also 3 Williston, Sales (rev. ed.), §600, p. 321.

The defendant, however, contends that this was an entire contract for the sale of 25,000 cabinets; that it has performed part of the contract by delivery of all but 3,271 cabinets; that plaintiff cannot rescind the contract unless it returns the benefits received thereunder; and that unless it does so it cannot sue in this form of action. We do not agree with this contention.

The purchase price in the instant case is based on a unit price. The defendant has received payment for the cabinets delivered by it on plaintiff's order. It has also received payment for those which it has failed to deliver. The amount paid for the latter is easily computable. The contract is severable. In such circumstances it is our opinion that the plaintiff has a right to rescind as to the portion of the contract which has not been performed, and in an action of assumpsit for money had and received to recover the purchase price paid and allocable to the portion of the contract which has not been performed, without returning

the part it had already received and paid for. *B. J. Carney & Co.* v. *Murphy,* 68 Idaho 376; *Hill* v. *Rewee,* 52 Mass. 268. 3 Williston, Sales (rev. ed.), §600a., p. 324. Exceptions 18, 19, 28 and 30 are overruled.

The exceptions which have been neither briefed nor argued are deemed to be waived.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Edwards & Angell, Edward F. Hindle, Stephen A. Fanning, Jr., Ronald R. Lagueux,* for plaintiff.

*Semonoff & Semonoff, Judah C. Semonoff,* for defendant.