USCA1 Opinion

 

 February 16, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-1444 IN RE: NEWPORT PLAZA ASSOCIATES, L.P., Debtor. _______________ NEWPORT PLAZA ASSOCIATES, L.P., Plaintiff, Appellant, v. DURFEE ATTLEBORO BANK, Defendant, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ _________________________ Robert S. Bruzzi, with whom James J. Beaulieu was on brief, _________________ _________________ for appellant. Michael R. McElroy, with whom Schacht & McElroy was on ___________________ __________________ brief, for appellee. _________________________ _________________________ SELYA, Circuit Judge. After entering insolvency SELYA, Circuit Judge. ______________ proceedings, plaintiff-appellant Newport Plaza Associates (Newport), a Rhode Island limited partnership, commenced an adversary proceeding against Durfee Attleboro Bank (the Bank), in which it claimed that the Bank failed to honor an oral agreement concerning the resumption of financing for a stalled construction project. The bankruptcy court and the district court both rejected the claim. The third time is not the charm: because the record shows beyond peradventure that the parties entered into a subsequent written contract, the terms of which directly contradicted, and therefore superseded, the alleged oral agreement, we affirm. I. BACKGROUND I. BACKGROUND On February 8, 1988, Newport executed and delivered to the Bank a promissory note, construction mortgage, and construction loan agreement in order to finance the erection of a shopping plaza in Newport, Rhode Island. Construction came to a screeching halt that November due to difficulties between Newport and its general contractor, DRL, Inc. When DRL and a number of subcontractors placed mechanics' liens on the property, Newport defaulted on the loan. Newport tried repeatedly to work out an agreement under which the Bank would be willing to restart the project. Newport claims that on December 20, 1988, the Bank agreed to resume financing the work pursuant to the terms of the original construction loan agreement if Newport, within a reasonable 2 period of time, resolved the mechanics' liens, brought interest payments current, reaffirmed occupancy commitments from third parties, and replaced DRL with a suitably qualified builder.1 Newport also claims that it complied with these conditions no later than March of 1989, but that the Bank reneged on the oral agreement. On October 13, 1989, with the project still dormant, Newport submitted a written proposal to the Bank anent continued financing. This proposal did not mention the oral agreement. By letter dated November 1, 1989, the Bank notified Newport that it had "decided not to allow restarting of the project." Instead, the Bank offered, "without waiving any . . . rights," to accept $881,000 in full satisfaction of the balance due ($1,381,000) on the promissory note. The Bank's terms required Newport, if it accepted the offer, to tender $881,000 in a lump sum within 90 days and, in the interim, to submit weekly progress reports on the status of the project and its efforts to obtain the funds needed to buy out the Bank's position. The letter, the text of which is reproduced in the appendix, gave Newport two weeks in which to accept the offer. It made no reference to the alleged oral agreement. Newport's partners signed and returned the letter before the appointed deadline. Thereafter, they failed to make the lump-sum payment within the stipulated 90-day period. When ____________________ 1The Bank steadfastly denies these allegations. Since the case was decided below on summary judgment, we assume for argument's sake that the oral agreement existed. 3 the Bank initiated foreclosure proceedings, Newport sought the protection of Chapter 11.2 In due course, Newport filed suit in the bankruptcy court alleging a breach of the oral agreement. After some procedural skirmishing, not material for our purposes, the bankruptcy court granted the Bank's motion for summary judgment. In re Newport Plaza Assocs., 129 B.R. 326 (Bankr. D.R.I. 1991). ____________________________ The court held that the letter exchange constituted an accord between the parties, wherein the Bank agreed to discharge Newport's original obligation in return for Newport's timely payment of a portion of the outstanding balance. Id. at 327. ___ The court ruled that because the Bank explicitly stated in the offering letter that it would not allow restarting of the project, and Newport accepted the terms of that letter, the exchange "created new contractual obligations between the parties and replaced the alleged December 20, 1988 oral agreement . . . ." Id. The bankruptcy court ruled, alternatively, that Newport ___ had neither established the existence of an oral agreement nor shown performance of its obligations thereunder.3 See id. at ___ ___ 327 n.1. Newport appealed. The district court convened a ____________________ 2The bankruptcy court, following a contested hearing, eventually granted the Bank's motion for relief from the automatic stay. The foreclosure proceedings have been consummated. 3Because this appeal is susceptible to resolution on the ground that the letter exchange extinguished any oral agreement, see infra, we do not consider this alternative holding. ___ _____ 4 hearing, afforded de novo review, and rendered summary judgment __ ____ ore tenus. In its bench decision, the district court reasoned ___ _____ that whether an oral agreement existed was of no consequence, as any such agreement was "completely inconsistent" with the subsequent exchange of correspondence. That correspondence, the court ruled, constituted an accord, superseding any prior agreement between the parties. On March 3, 1992, the clerk entered final judgment. Newport again appeals. The gist of its argument is that the district court erred in holding that, as a matter of law, Newport relinquished the right to resuscitate the original financing arrangement a right supposedly conferred by the oral agreement when it signed and returned the November 1 letter. Because we agree with the district court that the letter exchange constituted a valid contract in which the parties unambiguously expressed their mutual intention that the Bank would not supply funds to restart the project, we reject Newport's attempt to enforce the prior oral agreement and affirm the entry of judgment below. II. THRESHOLD LEGAL MATTERS II. THRESHOLD LEGAL MATTERS We begin by explicating certain legal principles in order to set the stage for a discussion of the merits. A. The Summary Judgment Standard. A. The Summary Judgment Standard. _____________________________ The summary judgment standard is familiar and has been frequently elucidated. Rather than attempting to reinvent so serviceable a wheel, we merely observe that, as the civil rules 5 themselves provide, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The opponent of a properly focused Rule 56 motion must demonstrate, by competent evidence, the existence of a triable issue which is both genuine and material to its claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 ___ ________ ___________________ (1986); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. _______ ________________ 1990). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." United States v. One Parcel of _____________ _____________ Real Property, Etc. (Great Harbor Neck), 960 F.2d 200, 204 (1st ________________________________________ Cir. 1992). "In the same context, 'material' means that the fact is one susceptible of altering the outcome of the litigation." Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. _______________ _____________ 1992). We afford plenary review to the entry of a summary judgment. Garside, 895 F.2d at 48. In so doing, this court, _______ like the courts below, must read the record in the manner most gratifying to the party opposing summary judgment, indulging all reasonable inferences in that party's favor. See Rivera- ___ _______ Muriente, 959 F.2d at 352; Griggs-Ryan v. Smith, 904 F.2d 112, ________ ___________ _____ 115 (1st Cir. 1990). B. Choice of Law. B. Choice of Law. _____________ 6 In this case, the underlying contract claim depends on state law. The parties briefed and argued the case on the apparent understanding that Rhode Island law governs the significance of their actions and the interpretation of their agreements. Both lower courts adjudicated the controversy on that basis. When opposing parties agree to the source of the substantive law that controls their rights and obligations, and no jurisdictional concerns are present, a court is at liberty to accept such an agreement without independent inquiry. See Moores ___ ______ v. Greenberg, 834 F.2d 1105, 1107 n.2 (1st Cir. 1987); Mathewson _________ _________ Corp. v. Allied Marine Indus., Inc., 827 F.2d 850 , 853 n.3 (1st _____ __________________________ Cir. 1987). We do so here. C. What's in a Name? C. What's in a Name? ________________ The parties have expended considerable effort debating whether the November 1 letter agreement should be evaluated as an accord and satisfaction or as a novation. We deem it unnecessary to venture into this Serbonian bog. The Rhode Island Supreme Court has traditionally manifested a concern with substance rather than form in this fuliginous corner of the law, hesitating to draw fine lines between these two closely allied kinds of contracts where no necessity exists for doing so. See, e.g., Mello v. Coy Real ___ ____ _____ _________ Estate Co., 234 A.2d 667, 671-72 (R.I. 1967) (noting that ___________ dissimilarities between the two theories are frequently of no concern, as both "operate to discharge all the rights and obligations emanating from a prior agreement"); Salo Landscape & ________________ 7 Constr. Co. v. Liberty Elec. Co., 376 A.2d 1379, 1382 (R.I. 1977) ___________ _________________ (holding that, when the parties' subsequent agreement created new contractual rights and obligations which extinguished those arising under the original contract, "it matters not" whether a court refers to the subsequent agreement as an accord and satisfaction or as a rescission followed by the formation of a new contract); see also Masse v. Masse, 313 A.2d 642, 645 (R.I. ___ ____ _____ _____ 1974) (stating that either a release or an accord and satisfaction of an alimony judgment "will bind the parties if fully complied with and supported by sufficient consideration"). Federal courts, construing state law, have often exhibited the same disinclination. For example, the Seventh Circuit, confronted with an analogous fact pattern, chose practicality over pettifoggery. See Calder v. Camp Grove State Bank, 892 F.2d ___ ______ _____________________ 629, 633 (7th Cir. 1990) (concluding that a "difference in the characterization of the [agreement] does not affect the outcome of this case, since, under Illinois law releases, novations, and accords and satisfactions are all contracts subject to the requirement of mutual intent and the constraints of the parol evidence rule"). The lesson to be learned from all of this is that, when it would serve no useful purpose to distinguish between accord and satisfaction, on the one hand, and novation, on the other hand, courts should refrain from performing what will amount to no more than an exercise in semantics. So it is here. If the November 1 agreement constitutes a valid contract, it binds the 8 parties in substantially the same manner whether we call it an accord and satisfaction or a novation, operating to discharge all the rights and obligations emanating from the preexisting oral agreement. III. ANALYSIS III. ANALYSIS The crux of this appeal involves a dispute over the interpretation of the letter agreement. We have recognized that, in certain circumstances, summary judgment is an appropriate vehicle for resolving contract-interpretation disputes. The key is the lack of any ambiguity. See FDIC v. Singh, 977 F.2d 18, 21 ___ ____ _____ (1st Cir. 1992); see also Fashion House, Inc. v. K Mart Corp., ___ ____ ____________________ _____________ 892 F.2d 1076, 1083 (1st Cir. 1989) (same rule applies in directed-verdict context). It is only when ambiguity looms that the interpretation of contract language, itself acknowledged, becomes a question of fact for the jury rather than a question of law for the judge. See Singh, 977 F.2d at 21; In re Navigation ___ _____ ________________ Technology Corp., 880 F.2d 1491, 1495 (1st Cir. 1989). These ________________ principles are in overall harmony with Rhode Island's jurisprudence. See, e.g., Judd Realty, Inc. v. Tedesco, 400 A.2d ___ ____ _________________ _______ 952, 955 (R.I. 1979); Fryzel v. Domestic Credit Corp., 385 A.2d ______ _____________________ 663, 666-67 (R.I. 1978); O'Connor v. McKanna, 359 A.2d 350, 353 ________ _______ (R.I. 1976). Under Rhode Island law, the determination of whether a contract's terms are ambiguous is itself a question of law for the court. See D.T.P., Inc. v. Red Bridge Properties, 576 A.2d ___ _____________ _____________________ 1377, 1381 (R.I. 1990); Westinghouse Broadcasting Co. v. Dial ______________________________ ____ 9 Media, Inc., 410 A.2d 986, 991 (R.I. 1980); accord Fashion House, ___________ ______ _____________ 892 F.2d at 1083. Generally, the Rhode Island Supreme Court will deem contract language to be ambiguous when and if it is "reasonably susceptible of different constructions." Westinghouse, 410 A.2d at 991; accord Fryzel, 385 A.2d at 667. ____________ ______ ______ Conversely, a contract which within the realm of reason can bear only a single plausible interpretation can be so construed by the court as a matter of law. See O'Connor, 359 A.2d at 354. Given ___ ________ similar parameters of substantive law, we have affirmed the granting of summary judgment where the words of a contract are so clear that "reasonable people could not differ over their meaning." Boston Five Cents Sav. Bank v. Secretary of Dep't of ____________________________ _____________________ HUD, 768 F.2d 5, 8 (1st Cir. 1985); accord Singh, 977 F.2d at 21; ___ ______ _____ Fowler v. Boise Cascade Corp., 948 F.2d 49, 54 (1st Cir. ______ ____________________ 1991).4 Where the language of a contract is clear and unambiguous, the Rhode Island Supreme Court has generally interpreted the parties' intent based solely on the written words.5 See D.T.P., Inc., 576 A.2d at 1381; Dudzik v. Leesona ___ ____________ ______ _______ ____________________ 4The Rhode Island Supreme Court has elucidated a similar standard in applying its own summary judgment rule. See Cassidy ___ _______ v. Springfield Life Ins. Co., 262 A.2d 378, 380 (R.I. 1970); __________________________ O'Connor, 359 A.2d at 354. ________ 5At least one Rhode Island case also looked to the parties' circumstances at the time the contract was made both to ascertain whether a term was ambiguous as used and to determine the parties' intent in using an otherwise unambiguous term. See ___ Westinghouse, 410 A.2d at 992. We need not dwell on this ____________ distinction, however, as consideration of the parties' circumstances in this case would only strengthen the interpretation of the letter agreement suggested by its plain 10 Corp., 473 A.2d 762, 765 (R.I. 1984); Fireman's Fund Ins. Co. v. _____ _______________________ E.W. Burman, Inc., 391 A.2d 99, 102 (R.I. 1978). Unambiguous _________________ language is to be accorded its plain and natural meaning. See ___ Dudzik, 473 F.2d at 765; cf. Flanagan v. Kelly's System of N.E., ______ ___ ________ _______________________ Inc., 286 A.2d 249, 251 (R.I. 1972) (construing Florida law but ____ indicating in dictum that Rhode Island law is identical in this respect). We employ these tools in analyzing Newport's assertions that issues of fact, related to the interpretation of the letter agreement, precluded the granting of summary judgment. A. Acceptance of the Agreement. A. Acceptance of the Agreement. ___________________________ We first address Newport's claim that there remains an issue of disputed material fact as to whether, by signing and returning the November 1 letter in the manner requested, it intended to accept the proposed terms and thereby form a binding contract. Newport argues that, in the letter, the Bank agreed to release Newport from its loan obligations only upon Newport's performance of three acts: (1) returning the letter, signed as accepted, within two weeks; (2) delivering a certified check for $881,000 within the period prescribed for payment; and (3) transmitting written progress reports betweentimes. Because Newport performed only one of the three acts return of the letter it envisions an issue of fact regarding whether it intended to accept the November 1 offer. Although we give ____________________ language. 11 appellant's counsel high marks for ingenuity, we do not believe that the letter can be construed in so elastic a manner. Under Rhode Island law, the Bank, as the offeror, controlled the offer and the terms of its acceptance. See B & D ___ _____ Appraisals v. Gaudette Mach. Movers, Inc., 733 F. Supp. 505, 508 __________ ___________________________ (D.R.I. 1990). It is a basic tenet of contract law that an offeror may, as a condition of the offer's acceptance, call for an act, a forbearance, or a return promise from the offeree in exchange for the offeror's promise or performance. See ___ McLaughlin v. Stevens, 296 F. Supp. 610, 613 (D.R.I. 1969). So __________ _______ long as the offeror sets forth what is being sought in reasonably certain terms, he may bind the offeree immediately by requiring acceptance in the form of a return promise rather than through performance. See B & D Appraisals, 733 F. Supp. at 508. ___ ________________ Viewed against this backdrop, Newport's position appears totally irreconcilable with the unambiguous language of the Bank's November 1 letter. After setting forth the terms of the offer, the Bank states the terms of its acceptance: "If you are in agreement with the terms and conditions detailed above, please so indicate by dating, executing and returning one copy of this letter for our files." This language is nose-on-the-face plain: the Bank asked for a return promise nothing more as the indicium of acceptance. Should any doubt linger, we are quick to remark that a court is duty bound to construe contractual terms in the context of the contract as a whole. See Woonsocket Teachers' Guild, ___ ____________________________ 12 Local 951 v. School Comm. of the City of Woonsocket, 367 A.2d __________ ________________________________________ 203, 205 (R.I. 1976). Here, the letter, read in its entirety, dispels any possible claim of ambiguity. It states that the "offer will expire November 14, 1989, and we must have your signed acceptance in our hands by 2:00 p.m. on that date." It then notes that, should Newport accept the offer, the Bank "must also receive" the progress reports and the lump-sum payment as promised. Words are not endlessly malleable. They have meaning and content. The particular combination of words that the parties utilized here, taken in the stated sequence, is susceptible of no reasonable interpretation other than that the parties intended themselves to be fully bound coincident with Newport's return of the letter, endorsed "APPROVED AND ACCEPTED," by the date and time specified. In contemplation of law, Newport accepted the terms of the offering letter by signing and returning it. B. The Effect of Newport's Consent. B. The Effect of Newport's Consent. _______________________________ Newport also claims that, even if it accepted the offer, there remains a question of fact regarding whether, by doing so, it intended to relinquish its right to sue the Bank for failure to resume financing the project pursuant to the oral agreement. This claim rests chiefly on an affidavit from Ronald Kutrieb, one of Newport's principals, professing his belief that, in signing the letter, he was not surrendering Newport's rights 13 under the oral agreement.6 In our view, this initiative ignores both unambiguous language and settled law. We explain briefly. As we have previously indicated, the plain language of the November 1 letter is difficult to overcome. To be sure, the letter made no reference to the earlier oral agreement. Nevertheless, the Bank did not mince words. The letter unequivocally stated that the Bank had "decided not to allow restarting of the project." These words are definite. Their purport is not contradicted by any other term in the agreement. The ordinary meaning of the quoted language, taken in context, is susceptible to no other reasonable interpretation than as an expression of the parties' mutual agreement that construction financing for the project would no longer be furnished by the Bank. In such clear-cut circumstances, the courts below had no principled choice but to hold that Newport, by accepting the offer in the manner indicated, assented to the "no further financing" term. See Fireman's Fund, 391 A.2d at 102; see also ___ _______________ ___ ____ Theroux v. Bay Assocs., Inc., 339 A.2d 266, 268 (R.I. 1975) _______ __________________ (explaining that a court will not import ambiguity into a contract that unmistakably expresses the parties' intentions). Nor did the Kutrieb affidavit create a roadblock en route to this result. Contracts ordinarily depend on objective ____________________ 6The Bank's letter transposed two vowels in Kutrieb's name. Moreover, one of Newport's partners, Joseph J. Dabek, apparently did not sign the letter. The parties do not mention either the misspelling or the omission and we, too, deem them inconsequential. 14 indicia of consent, not on a party's subjective expectations. When, as in this instance, the parties' intent is made manifest by the express terms of a written agreement, fairly construed, a court interpreting the agreement should not look to "some undisclosed intent that may have existed in the minds of the contracting parties but [should be governed by] the intent that is expressed by the language contained in the contract." Woonsocket Teachers' Guild, 367 A.2d at 205; accord Westinghouse, __________________________ ______ ____________ 410 A.2d at 991 n.10; see also Smith v. Boyd, 553 A.2d 131, 133 ___ ____ _____ ____ (R.I. 1989) (explaining that, under Rhode Island law, objective manifestations of intent govern contract formation); Mathewson _________ Corp., 827 F.2d at 853-54 (same; applying Massachusetts law). _____ Hence, the Kutrieb affidavit raised no genuine issue of material fact sufficient to preclude the entry of summary judgment. See, ___ e.g., Singh, 977 F.2d at 23 (affirming summary judgment for ____ _____ lender on the basis, inter alia, that a litigant may not _____ ____ subrogate the terms of an unambiguous contract to his supposed contemplation of its meaning) (applying Massachusetts law); Cassidy v. Springfield Life Ins. Co., 262 A.2d 378, 380 (R.I. _______ ___________________________ 1970) (stating that, where a contract's terms are clear and unambiguous, and there are no questions of material fact to be resolved, the nisi prius court may grant summary judgment). ____ _____ We see no way around this outcome. The Bank's explicit disclaimer of any intention to restart the project in the subsequent letter agreement directly contradicts the supposed oral agreement (wherein the Bank allegedly agreed to pour more 15 money into the project upon Newport's fulfillment of certain conditions). Given this direct contradiction, the letter agreement, being later in time, necessarily superseded any and all prior oral agreements anent restarting construction. It is, after all, settled law that, if the terms of a prior oral negotiation are dealt with, or covered by, a later written agreement between the parties on the same general subject, then, presumably, the latter was intended to supersede the former, and should be so construed. See Rogers v. Zielinski, 170 A.2d 294, ___ ______ _________ 296 (R.I. 1961) (explaining that, if confronted with such a situation, a court should assume that "the writing was meant to represent all of the transaction on that element") (quoting 9 Wigmore, Evidence 2430(3) (3d ed. 1940)); Philip Carey Mfg. ________ _________________ Co. v. General Prods. Co., 151 A.2d 487, 492 (R.I. 1959) (holding ___ __________________ that parties to a novation waive any rights they might have had under the prior agreement); Quinn v. Bernat, 97 A.2d 273, 275 _____ ______ (R.I. 1953) (stating that a complete written agreement becomes the memorial of the parties' intent, "merging or integrating all prior oral agreements relating to the subject matter"). C. Lack of Consideration. C. Lack of Consideration. _____________________ Newport also asserts that the letter agreement is unenforceable for want of consideration. Since the Bank ultimately foreclosed and retained the right to pursue collection of the entire indebtedness, this thesis runs, Newport received nothing of value in return for relinquishing its rights under the oral agreement. We disagree. 16 The November 1 agreement was supported by valuable consideration on both sides. For its part, the Bank was willing to shave approximately half a million dollars from Newport's outstanding debt. Although Newport would not reap the benefit of this considerable savings unless and until it made a timely payment of $881,000, the value of the opportunity, coupled with Newport's forbearance for the 90-day waiting period, was itself substantial and furnished valid consideration for Newport's return promise. See, e.g., Philip Carey Mfg., 151 A.2d at 491-92 ___ ____ _________________ (holding that mutual agreement to forbear from asserting previously acquired legal claims is adequate consideration, as a matter of law, to support new promises made in a novation); Phenix Nat'l Bank v. Raia, 28 A.2d 20, 22 (R.I. 1942) ("broadly __________________ ____ speaking, an agreement to forbear to enforce rights under an original obligation is, under the proper circumstances, recognized as good consideration for a new obligation"); see also ___ ____ Higgins v. Mycroft, 92 A.2d 727, 729 (R.I. 1952). _______ _______ If practiced parties to commercial transactions bargain for, and receive, consideration that they deem satisfactory and that the law regards as substantial, it is not a court's role, absent fraud or other exceptional circumstances, to evaluate the relative adequacy of the consideration or to reweigh the soundness of the parties' judgments. See Fall River Nat'l Bank ___ ______________________ v. DeMarco, 249 A.2d 900, 903-04 (R.I. 1969). _______ IV. CONCLUSION IV. CONCLUSION 17 We need go no further. In the November 1 letter agreement, the parties unequivocally agreed that the Bank would not resume financing the ill-fated construction project. The letter agreement superseded, and thus extinguished, all prior negotiations on the same general topic. This means, of course, that Newport's attempt to sue for a failure to restart the project pursuant to the parties' earlier oral agreement cannot be countenanced even if such an agreement existed at one moment in time. Affirmed. Affirmed. ________ 18 APPENDIX November 1, 1989 Newport Plaza Associates, L.P. c/o Capital Growth Companies Mr. Ronald E. Kutreib 221 Third Street Newport, Rhode Island 02840 Gentlemen: This is to confirm our meeting of October 27, 1989. Durfee Attleboro Bank has received and reviewed your proposal dated October 13, 1989, to restart the project. As you know, your $2,200,000.00 note dated February 8, 1988, remains in default, as set forth in our letter to you of April 26, 1989. After our complete review of this proposal, we have decided not to allow restarting of the project. However, without waiving any of our rights, we will allow Newport Plaza Associates, L.P. until February 1, 1990, to pay the Bank $881,000.00, and if payment is received by said date, said sum will be accepted as full payment of the Bank's $2,200,000.00 note dated February 8, 1988. Therefore, if you accept this offer you must deliver to us no later than 2:00 p.m., February 1, 1990, a certified check payable to Durfee Attleboro Bank in the amount of $881,000.00. If you are in agreement with the terms and conditions detailed above, please so indicate by dating, executing and returning one copy of this letter for our files. This offer will expire November 14, 1989, and we must have your signed acceptance in our hands by 2:00 p.m. on that date. If you accept this offer, we must also receive detailed weekly written progress reports on the status of the project and your efforts to obtain the $881,000.00, which reports will be due every Thurs- day at 3:00 p.m. via fax machine (508 679-8361). If you fail to strictly meet all the terms and conditions as set forth above, we may immediately pursue any and all of our rights and our remedies to enforce our rights, including, but 19 Newport Plaza Associates, L.P. -2- November 1, 1989 not limited to foreclosure. Time is of the essence in all respects. Sincerely, Durfee Attleboro Bank _____________________________ Anthony J. Riccitelli Assistant Vice President APPROVED AND ACCEPTED: NEWPORT PLAZA ASSOCIATES, L.P. By:____________________________ ___________________________ Ronald E. Kutreib, partner Date By:____________________________ ___________________________ Joseph J. Dabek, partner Date By:____________________________ ____________________________ James J. Beaulieu, partner Date ____________________________ ____________________________ Ronald E. Kutreib, guarantor Date ____________________________ ____________________________ Joseph J. Dabek, guarantor Date ____________________________ ____________________________ James J. Beaulieu, guarantor Date CERTIFIED MAIL RETURN RECEIPT REQUESTED 20