**CALDWELL & SANTMYER, INC., Appellant,**

v.

**Dan GLICKMAN, Secretary of Agriculture, Appellee.**

**No. 94–1314.**

United States Court of Appeals, Federal Circuit.

June 8, 1995.

Linda M. Schuett, Blum, Yumkas, Mailman, Gutman & Denick, P.A., Baltimore, MD, argued, for appellant. With her on the brief was Joseph C. Kovars.

Jeffrey J. Bernstein, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for appellee. With him on the brief were Frank W. Hunger, Asst. Atty. Gen. and David M. Cohen, Director.

Before RICH, NIES, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

This is a Contract Disputes Act[1] case. Appellant, Caldwell & Santmyer, Inc. ("Caldwell"), appeals from the decision of the United States Department of Agriculture Board of Contract Appeals ("Board") in *Caldwell & Santmyer, Inc.*, AGBCA No. 93–191–1, 94–2 BCA (CCH) ¶ 26,854, 1994 WL 125892 (April 13, 1994). In its decision, the Board granted the Department of Agriculture's ("Agriculture's") motion for summary judgment, denied Caldwell's similar motion, and dismissed Caldwell's appeal. Caldwell had appealed to the Board from a contracting officer's final decision denying its claim for alleged wrongful termination of a construction contract between Caldwell and Agriculture's Animal and Plant Health Inspection Service ("APHIS"). APHIS terminated the contract for the convenience of the government after award but before construction had started or a notice to proceed had been issued. Because the decision of the Board is supported by substantial evidence and is not tainted by legal error, we affirm.

## BACKGROUND

### A.

The pertinent facts are not in dispute.[2] On April 27, 1992, APHIS solicited bids for the construction of its Plant Germplasm Quarantine Laboratory in Beltsville, Maryland. Caldwell was one of the bidders. Both the specifications and an equipment schedule in the contract listed two categories of equipment as "vendor furnished/vendor installed." APHIS received no questions from prospective bidders concerning the term "vendor furnished/vendor installed."

R.J. Crowley, Inc. ("Crowley") submitted the lowest bid, which was 41 percent lower than the APHIS estimate. After APHIS asked Crowley to submit the cost summary sheets it had used in preparing its bid, Crowley informed APHIS of two mathematical errors in the bid. APHIS also discovered that Crowley had omitted the costs for "vendor furnished/vendor installed" equipment. Crowley was permitted to withdraw its bid on August 8, 1992, making Caldwell the lowest bidder.

Because of the problems APHIS had experienced with Crowley's bid, the contact person at APHIS for the contract asked Caldwell to submit the cost summary sheets it had used in determining its bid price. Caldwell complied with the request on August 11, 1992. The cost summary sheets showed that Caldwell had not included any costs for the "vendor furnished/vendor installed" equipment. When the contracting officer returned from vacation and was told by his contact person that Caldwell's bid did not include any costs for the "vendor furnished/vendor installed" items, he was angry that Caldwell had been asked for its cost summary sheets. In his opinion, APHIS had no reason to believe that Caldwell's bid contained an error that would require bid verification. His opinion was based on the analysis of the architectural/engineering firm that had prepared the specifications for the project and on the amounts of the next three lowest bids. Accordingly, he instructed that Caldwell be sent the routine preaward letter. The letter was sent on August 17. On September 7, APHIS awarded Caldwell the contract.

1. 41 U.S.C. §§ 601–12 (1988 & Supp. V 1993).

2. The facts set forth herein are taken from the Agreed Statement of Facts and Damages that the parties submitted to the Board and on the basis of which they cross-moved for summary judgment.

Caldwell interpreted the specification's "vendor furnished/vendor installed" language to mean government furnished, as opposed to contractor furnished, whereas APHIS wanted the "vendor furnished/vendor installed" equipment to be contractor furnished with a vendor representative present and involved in the installation.

On October 5, 1992, after reviewing the bid proposal for the first time, the contracting officer personally concluded that Caldwell had not included in its bid any costs for "vendor furnished/vendor installed" equipment. The next day, he wrote Caldwell a letter in which he stated that, as the general contractor, it was responsible for supplying equipment designated "vendor furnished/vendor installed." He asked Caldwell to submit a corrected bid in accordance with mistake after award procedures, and directed that no work proceed under the contract. Caldwell responded that it had not erred in its bid submission. As noted above, Caldwell interpreted the "vendor furnished/vendor installed" language as requiring that APHIS furnish the equipment involved. After reviewing the specifications and drawings, the contracting officer concluded that the term "vendor furnished/vendor installed" was not precisely defined and that Caldwell had not made an error in its bid.

APHIS estimated the cost of supplying and installing the omitted equipment to be between $200,000 and $300,000, and decided not to proceed under a contract that would require such a material alteration. As a result, on November 23, 1992, it terminated Caldwell's contract for convenience. The termination letter stated that the contract had been erroneously awarded, that the solicitation contained defective specifications susceptible to more than one reasonable interpretation, that other bidders on the project also may have omitted the costs of "vendor furnished/vendor installed" equipment, that the ambiguity of the specifications impeded full and open competition, and that corrective action would prejudice the other bidders.

On January 5, 1993, Caldwell submitted two settlement proposals to the contracting officer. The first was a termination for convenience settlement proposal in the amount of $24,669.13. Caldwell wrote that the proposal was comprised of overhead costs "plus standard markups and settlement expenses." APHIS accepted this proposal and paid Caldwell pursuant to it.

Caldwell's second settlement proposal was for breach of contract, based upon alleged wrongful termination of the contract; it was in the amount of $148,132.66. Caldwell explained that it was seeking to recover lost profits and overhead of $146,666 and a bonding premium of $1,466.66.[3] Citing *Torncello v. United States,* 681 F.2d 756, 231 Ct.Cl. 20 (1982), Caldwell asserted that APHIS could not use the termination for convenience clause "to terminate a contract where the circumstances of the bargain or the expectations of the parties have not changed." According to Caldwell, APHIS could not use the termination for convenience clause "simply to get out of a bad deal that it was aware of, or should have been aware of, at the time of the contract award." After the contracting officer denied its proposal, Caldwell appealed to the Board.

### B.

In granting Agriculture's motion for summary judgment, the Board noted that, under the termination for convenience clause, a contracting officer has "broad discretion." *Caldwell,* 94–2 BCA (CCH) at 133,625. The Board observed that, in Caldwell's case, the clause appeared to have been used "for its intended purpose of ending an improvident procurement." *Id.* Accordingly, the Board concluded, the contracting officer had not abused his discretion in terminating the contract. *Id.* The Board rejected Caldwell's *Torncello* argument. It found "no evidence the Government intended before award to terminate the contract for any reason." *Id.*

---

**3.** Before the Board, the parties eventually agreed to $125,000 as the amount of any award to Caldwell for this claim.

## DISCUSSION

We treat the decision of an agency board on any question of fact as final and conclusive unless the decision is "fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. § 609(b) (1988). In reviewing the decision of an agency board on any question of law, we are not bound by the conclusions of the board. *Fruin–Colnon Corp. v. United States,* 912 F.2d 1426 (Fed. Cir.1990).

### A.

Caldwell contends first that the contracting officer acted in bad faith and abused his discretion in terminating the contract for convenience. The termination for convenience clause of the contract provided, in pertinent part, as follows:

(a) The Government may terminate performance of work under this contract in whole, or from time to time in part, if the Contracting Officer determines that a termination is in the Government's interest.

48 C.F.R. § 52.249–2 (1994).

We have stated that "[i]t is not the province of the courts to decide *de novo* whether termination was the best course. In the absence of bad faith or clear abuse of discretion the contracting officer's election to terminate is conclusive." *Salsbury Indus. v. United States,* 905 F.2d 1518, 1521 (Fed.Cir. 1990) (quoting *John Reiner & Co. v. United States,* 325 F.2d 438, 442, 163 Ct.Cl. 381 (1963)). We assume the government acts in good faith when contracting. *Torncello,* 681 F.2d at 770; *Librach v. United States,* 147 Ct.Cl. 605, 1959 WL 7633 (1959). A contractor can overcome this presumption only if it shows through "well-nigh irrefragable proof" that the government had a specific intent to injure it. *Torncello,* 681 F.2d at 770.

The stipulated facts do not support Caldwell's claim of either bad faith or abuse of discretion. As indicated above, according to the stipulation, Caldwell interpreted the specification's "vendor furnished/vendor installed" language to mean government furnished, as opposed to contractor furnished, whereas APHIS wanted the "vendor furnished/vendor installed" equipment to be contractor furnished, with a vendor representative present and involved in the installation. Significantly, upon learning that Caldwell did not believe it had made a mistake in its bid, the contracting officer did not immediately terminate the contract outright; rather, he examined the contract to see if he could fairly take the position that Caldwell's reading of the "vendor furnished/vendor installed" language was wrong. It is clear that the contracting officer wanted to hold Caldwell to its bid price and to require that it pay for "vendor furnished/vendor installed" equipment. Ultimately, though, he rejected that course of action and decided to terminate the contract because the modification that would have been necessary to reflect Agriculture's original intent would have been too costly and would have been unfair to the other bidders.

In short, after concluding that a critical contract provision had been poorly drafted and that the error could not be remedied through an amendment, the contracting officer decided to terminate the contract. The stipulated facts simply do not support Caldwell's claim that the contracting officer acted in bad faith or abused his discretion. Because Caldwell failed to carry its burden of proof on this element of its claim, we agree with the Board that, in this case, there was "no impropriety in the Government's exercising its contractual right to terminate." *Caldwell,* 94–2 BCA (CCH) at 133,625.

### B.

On appeal, Caldwell also renews its *Torncello* argument. It claims that the termination for convenience in this case was wrongful and should be treated as a breach because—even assuming APHIS was not motivated by bad faith—it knew prior to awarding the contract that Caldwell's bid did not include the cost of equipment designated as "vendor furnished/vendor installed." According to Caldwell, "a termination for convenience *is* improper when the Government had *actual* knowledge, as was true in *Torncello* and as is true here, and chose to contract anyway." (Emphasis in original).

We explained *Torncello* in *Salsbury Industries v. United States:* "[*Torncello*] stands for the unremarkable proposition that when the government contracts with a party knowing full well that it will not honor the contract, it cannot avoid a breach claim by adverting to the convenience termination clause." 905 F.2d at 1521. *Salsbury* teaches that bad faith ("the government contracts with a party knowing full well that it will not honor the contract") is a prerequisite for a *Torncello* claim.

The same facts that stand in the way of Caldwell's bad faith/abuse of discretion claim—discussed above—bar the door to its *Torncello* argument. As the Board found, there is "no evidence the Government intended before award to terminate the contract for any reason." *Caldwell*, 94–2 BCA at 133,625. Caldwell is asking us to extend *Torncello* to the situation in which the government contracts in good faith but, at the same time, has knowledge of facts supposedly putting it on notice that, at some future date, it may be appropriate to terminate the contract for convenience. We decline the invitation. We see no merit in putting such an additional limitation on the government's use of the termination for convenience clause.

## CONCLUSION

For the foregoing reasons, the decision of the Board that APHIS did not act improperly in terminating Caldwell's contract for the convenience of the government is supported by substantial evidence and is free of legal error. Accordingly, the Board did not err in granting Agriculture's motion for summary judgment and dismissing Caldwell's appeal.

## COSTS

Each party shall bear its own costs.

AFFIRMED.