OPINION OF THE COURT
Arthur W. Lonschein, J.
The defendant’s motion is determined as follows:
*423 The plaintiff, A.J. Temple Marble & Tile, Inc. (Temple), and the defendant, the Long Island Rail Road (LIRR), a public benefits corporation owned by the Metropolitan Transportation Authority, entered into a contract on October 4, 1994 to clean Penn Station. Temple was the 9th lowest bidder out of 11 bidders on the project. Three contractors who had bid for the contract filed protests with the LIRR over its award to Temple. One of the lowest bidders, Nelson Maintenance (Nelson), brought a CPLR article 78 proceeding in January of 1995 to nullify the award on the grounds that the LIRR violated the public bidding laws by not awarding the contract to the lowest bidder. This court held the petition in abeyance until Nelson joined Temple as a party and renoticed the matter for a hearing. The parties, however, stipulated in July of 1995 to dismiss the proceeding. Meanwhile, several elected officials had written to the LIRR on behalf of Nelson requesting attention to Nelson’s concerns.
The LIRR sent Temple a notice, dated December 21, 1995, to terminate the contract as of May 10, 1996, pursuant to the "termination for convenience” clause of the contract. Minutes of LIRR meetings and LIRR memoranda indicate that the LIRR was trying to avoid a negative perception of its business credibility as a result of awarding the contract to the ninth lowest bidder. The evidence also shows that the LIRR determined that rebidding offered the possibility of cost savings. The notice demanded that Temple minimize termination costs, and submit a detailed statement of amounts due for work completed through the termination date and an estimate of costs incidental to the termination of work. Temple submitted statements and estimates to the LIRR but has yet to receive the payments requested.
On or about September 13, 1996, Temple commenced an action alleging that the LIRR (1) breached the contract and acted in bad faith and in an arbitrary and capricious manner by terminating the contract; or, in the alternative, (2) breached the contract and violated the duty of good faith and fair dealing by refusing to reimburse Temple for the costs of termination, damages, and loss profits; and (3) is liable for actual damages resulting from wrongful interference with Temple’s existing contracts as a result of the termination, as well as punitive damages for "outrageous and unethical” behavior.
The LIRR now seeks the following summary judgment determinations: (1) the LIRR did not breach the contract by invoking the termination for convenience clause; (2) Temple is *424 not entitled to recover actual or punitive damages because there is no breach of contract; and (3) Temple is entitled only to the costs specified in the contract. The LIRE also moves to strike material from the complaint that it deems prejudicial and scandalous, and for costs.
The authority on termination for convenience clauses in government contracts has developed primarily in the Federal courts, not State courts. Thus the court shall look primarily to Federal case law for guidance on this matter.
A standard "termination for convenience” clause in a government contract provides the government with broad rights to terminate á contract whenever the government deems that termination is in its interest. (See, Maxima Corp. v United States, 847 F2d 1549, 1552; Reiner & Co. v United States, 325 F2d 438, 442.) These clauses limit a contractor’s recovery to the costs incurred as a result of the termination, payment for completed work, and the cost of preparing a termination settlement proposal. (See, Maxima Corp. v United States, supra, at 1552.) They often preclude or fail to include recovery of punitive damages or anticipated profits, which is recoverable in a common-law breach of contract suit. Thus, a termination for convenience clause limits the government’s liability for a termination action that would otherwise constitute a breach of contract. (See, Krygoski Constr. Co. v United States, 94 F3d 1537,1540-1541; Maxima Corp. v United States, supra, at 1552.)
Nonetheless, despite recovery limitations contained in a termination for convenience clause, a contractor may recover full breach of contract damages if it can show that the government acted in bad faith or abused its discretion in invoking the termination clause. (Krygoski Constr. Co. v United States, supra, at 1540-1541; Caldwell & Santmyer v Glickman, 55 F3d 1578,1581; Reiner & Co. v United States, supra, at 442.) Temple argues that, under Torncello v United States (681 F2d 756), the LIRR should be liable for breach of contract damages because it acted in bad faith and abused its discretion when it invoked the termination clause.
In Torncello (supra), the Government agreed to buy services without actually intending to honor that agreement. When the contractor protested, the Government adverted to the termination for convenience clause of the contract. The court held that the contract was to be enforced as written because there was no "change from the circumstances of the bargain or in the expectations of the parties” to justify invoking the termination clause. (Torncello v United States, supra, at 772.) Temple as *425 serts that, as in Torncello, the LIRE knew of the facts prior to executing the contract and that the circumstances surrounding those facts or the expectation of the parties have not changed. The LIRE knew that Temple was the ninth lowest bidder on the contract. Therefore, according to Temple, the LIRE cannot now claim that termination was necessary because there might be a negative perception of its business credibility for failing to choose the lowest bidder.
Torncello (supra), however, was subsequently construed by the Federal Circuit in Caldwell & Santmyer v Glickman as applying only to situations where the Government enters into a contract "knowing full well that it will not honor the contract”. (Caldwell & Santmyer v Glickman, supra, at 1582; see, Krygoski Constr. Co. v United States, supra, at 1543-1544; Salsbury Indus. v United States, 905 F2d 1518, 1521.) In this matter, there is no evidence that the LIRR entered into the contract with the intention of not honoring it. The affidavit from the LIRR’s Director of the Department of Procurement and Materials, William Garrison, and LIRR memoranda show that Temple was chosen because it was deemed the most technically and financially responsible bidder in comparison to the other bidders. The LIRR was satisfied with Temple’s work, did not take any actions to frustrate Temple’s performance of the terms of the contract prior to termination, or try to procure services from another vendor. These are not the actions of a party that has no intention of honoring the contract.
However, even if Temple was able to show that the government entered into an agreement with no intention of honoring it, Temple still must establish bad faith as a "prerequisite for a Torncello claim.” (Caldwell & Santmyer v Glickman, supra, at 1582; see, Krygoski Constr. Co. v United States, supra, at 1544.) In other words, precontractual knowledge of facts that may ultimately lead to a termination of the contract is insufficient to support a request for breach of contract damages. A contractor still has to set forth egregious facts demonstrating a clear abuse of discretion or bad faith. (Caldwell & Santmyer v Glickman, supra, at 1582.)
Bad faith in the context of a termination for convenience clause has been defined as "malicious intent” or "animus” towards the contractor. (Kalvar Corp. v United States, 543 F2d 1298, 1301-1303; see, Caldwell & Santmyer v Glickman, supra, at 1581.) A discretionary matter has been characterized as a matter where the party has flexibility in exercising its discretion within an otherwise legal agreement. (See, Torncello v *426 United States, supra, at 772.) Temple has failed to raise a triable issue of fact as to whether the LIRE acted with any malicious intent or animus or abused its discretion. There is no evidence that it was acting beyond the scope of its own procedures. Temple’s contract was evaluated under the LIRR’s termination-of-contract procedure and the evidence indicates that the LIRE deliberated over whether to terminate the contract. While there is a memo indicating that, in addition to the formal reasons given by the LIRE for termination, the contract was terminated for political concerns, it is not for the court to substitute its judgment of the government entity and decide whether termination was the best course. (See, Caldwell & Santmyer v Glickman, supra, at 1581; Salsbury Indus. v United States, supra, at 1521.) Furthermore, the fact that the LIRE altered the bid specifications so as to require a bond and two months’ capital in cash or credit, which prevented Temple from participating in the rebidding, is insufficient to show that the LIRE was acting with malicious intent. Again, it is not for the court to review the LIRR’s business judgment or to determine what is in the LIRR’s "best interest”. Thus, in the absence of facts showing that the LIRE acted with impropriety in exercising its contractual right to terminate for convenience, summary judgment as to this branch of the LIRR’s motion is granted and the LIRR’s termination of the contract does not constitute a common-law breach.
The LIRR’s motion on the issue of damages is granted to the extent that Temple is entitled only to the damages specified in the termination for convenience clause of the contract. Since there was a valid contractual termination and no breach of contract, Temple is not entitled to anticipatory profits, punitive damages, or actual damages. (See, Salsbury Indus. v United States, supra, at 1522.) Temple is entitled only to reasonable termination costs, payment for work completed through the termination date, and reasonable costs incidental to the termination of work. As to what constitutes "reasonable” is for a trier of fact to decide.
The remainder of the LIRR’s summary judgment motion is denied.