Kaplan, Mitchell H., J.
In July 2016, defendant Massachusetts Bay Transportation Authority (MBTA) terminated its two-year fuel supply agreement with plaintiff A.L. Prime Energy Consultant, Inc. (Prime). The MBTA explained that the termination was made pursuant to its exercise of a contractual right that permitted termination for convenience. The MBTA terminated the contract in order to take advantage of cost savings it believed it could achieve by purchasing fuel through the Commonwealth’s existing statewide fuel contract. Prime alleges that the MBTA abused its discretion when it invoked the termination for conve *165 nience provision and that therefore the MBTA is liable for breach of contract and breach of the covenant of good faith and fair dealing. The matter is now before the Court on the MBTA’s motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6). For the reasons that follow, the motion is DENIED.
BACKGROUND
The following facts are drawn from the allegations in Prime’s complaint, which are accepted as true for the purposes of this motion, the exhibits attached to the complaint, and matters of public record appropriate for judicial notice. See Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000); Waterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993).[1]
On Januaiy 15, 2015, the MBTA’s Materials Management Department issued an Invitation for Bids (IFB) for the supply of Ultra Low Sulfur Diesel Fuel (ULSD). The IFB provided that the contract would have a two-year term.
A few months later, the Operation Services Division of the Commonwealth’s Executive Office of Administration and Finance (OSD), which is responsible for establishing statewide contracts on behalf of state public purchasers, issued a Request for Response (RFR) seeking bids for the statewide supply of ULSD. The RFR divided the state into eight zones based upon geographic proximity and requested that bidders submit a price proposal for each zone with the possibility that a separate contract could be executed for each zone. The RFR specified that the initial term of the contract between a successful bidder and the OSD would be one year, with three options to renew of up to one year each. Dennis Burke, Inc. was the successful bidder for zones 1, 2, 3, 5, and 6.[2] It executed a contract to provide ULSD to those zones on June 30, 2015 (the Statewide Contract).
On July 1, 2015, Prime was awarded the contract to supply ULSD to the MBTA in accordance with the MBTA’s IFB (Prime Contract).[3] The contract contained a so-called “termination for convenience” provision that states:
Termination for Convenience. The Authority [MBTA] may, in its sole discretion, terminate all or any portion of this Agreement or the work required hereunder, at any time for its convenience and/or for any reason by giving written notice to the Contractor [Prime] thirty (30) calendar days prior to the effective date of termination or such other period as is mutually agreed upon in advance by the parties. If the Contractor is not in default or in breach of any material term or condition of this Agreement, the Contractor shall be paid its reasonable, proper and verifiable costs in accordance with generally accepted government contracting principals as set forth in the Federal Acquisition Regulations, including demobilization and contract closeout costs, and profit on work performed and Accepted up to the time of termination to the extent previous payments made by the Authority to the Contractor have not already done so. Such payment shall be the Contractor’s sole and exclusive remedy for any Termination for Convenience, and upon such payment by the Authority to the Contractor, the Authority shall have no further obligation to the Contractor. The Authority shall not be responsible for the Contractor’s anticipatory profits or overhead costs attributable to unperformed work.
Prime Contract at §5.29.3.
Approximately two weeks after the parties entered the Prime Contract, the 2015 Appropriations Act (Chapter 46 of the Acts of 2015) became effective. The Act enacted a series of legislative initiatives meant to reform the MBTA. Those reforms included the creation of a Fiscal and Management Control Board (FMCB) that was charged with, among other things, securing the fiscal stability of the MBTA. The Act granted the FMCB a three-year exemption (2015-2018) from the requirements in G.L.c. 7, §§52-55, the so-called Pacheco Law.[4] The Act also required the FMCB to provide annual reports to the Legislature detailing the outsourcing contracts that utilized the temporary exemption.
In April 2016, the MBTA informed Prime that it was considering purchasing ULSD under the Statewide Contract because it believed this would result in cost savings. A few months later, by letter dated July 12, 2016, the MBTA terminated the Prime Contract pursuant to the contract’s termination for convenience provision so that it could participate in the Statewide Contract. Prime challenged the MBTA’s claims that it would save money by switching to a new vendor and contended that the MBTA’s cost-savings rationale was not a proper basis upon which to terminate the contract for convenience. The MBTA did not rescind the termination.
On September 1, 2016, the FMCB issued its first annual report as required under the 2015 Appropriations Act. The report, in addition to describing the contracts executed pursuant to the exemption, indicated that the MBTA planned to participate in statewide contracts to obtain better volume discounts. See Annual Report at 9. A few days after the report was issued, Prime filed the present lawsuit against the MBTA.
Prime brings claims for breach of contract (Count I) and breach of the implied covenant of good faith and fair dealing (Count II). It asserts that termination for convenience clauses, like the one in the Prime Contract, cannot be invoked for the sole purpose of obtaining a better price from another contractor. In consequence, the MBTA abused its discretion when it terminated the Prime Contract so that it could purchase ULSD under the Statewide Contract, allegedly at a better price. In moving to dismiss the complaint, the MBTA argues that “as a matter of well settled law,” *166 it could invoke the termination for convenience clause to purchase product from a less expensive vendor.
DISCUSSION
I. Standard of Review
When evaluating the legal sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that may be drawn in the plaintiffs favor. Berish v. Bornstein, 437 Mass. 252, 267 (2002). To survive a motion to dismiss, a complaint must set forth the basis of the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-36 (2008), quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative level . . .” Id., quoting Bell Atlantic Corp., 127 S.Ct. at 1964-65. At the pleading stage, a complaint must set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief...” Id., quoting Bell Atlantic Corp., 127 S.Ct. at 1966.
II. Analysis
Normally, a party who terminates a contract without fault or breach from the other party is liable for breach of contract and is required to pay the other party anticipatory and consequential damages. Termination for convenience clauses, however, permit one party to terminate a contract, even absent cause, without breaching the contract and incurring such damages. See Julie A. Roin, Public-Private Partnerships and Termination for Convenience Clauses: Time for a Mandate, 63 Emory L.J. 283, 285 (2013). The clauses generally limit the other party’s recovery to costs incurred, profits for work done, and the costs of preparing the termination settlement. Id.
Termination for convenience clauses first appeared during the Civil War and were also employed during World Wars I and II. Roin, supra, at 286; see also Krygoski Construction Co. v. United States, 94 F.3d 1537, 1540-41 (Fed.Cir. 1996) (discussing history of the clause); Torncello v. United States, 681 F.2d 756, 764-66 (Ct.Cl. 1982) (same). The federal government used them to avoid costly military procurements that were rendered unnecessary by changing wartime technology or the cessation of the war. Roin, supra, at 286. After World War II, the use of the provisions expanded greatly. They became common features of both peacetime military procurement contracts, as well as a variety of civilian federal procurement contracts. Id.
Their widespread use persists to the present day. Id. Termination for convenience clauses are currently found in almost all federal procurement contracts. Id. at 287; see also TigerSwan, Inc. v. United States, 110 Fed.Cl. 336, 344 (2013). They are also frequently included in state and local government procurement contracts, such as the one at issue here. See, e.g., A.J. Temple Marble & Tile, Inc. v. Long Is. RR, 172 Misc.2d 422, 423 (N.Y.Sup.Ct. 1997).[5]
Because these clauses first developed in the context of federal procurement, the authority on termination for convenience clauses in government contracts has developed primarily in the Federal Circuit Court of Appeals and its predecessor the Court of Claims. Accordingly, state courts have looked to federal case law for guidance in determining whether such a provision was properly invoked in the context of state or local government procurement contracts. See Linan-Faye Constr. Co. v. Housing Auth. of Camden, 49 F.3d 915, 921-22 (3d Cir. 1995); A.J. Temple Marble & Tile, Inc., 172 Misc.2d at 424; Capital Safety, Inc. v. New Jersey Div. of Bldgs, and Constr., 848 A.2d 863, 866 (N.J.App.Div. 2004). But see Handi-Van, Inc. v. Broward Cnty., 116 So.3d 530, 538-40 (Fla.Ct.App. 2013) (analyzing validity of a termination for convenience under state contract law). In the present case, both parties rely on Federal Circuit court decisions to support their positions.[6]
The Federal Circuit has made clear that the right to terminate a federal contract under a termination for convenience clause is not without limits. Despite the broad language contained in these clauses, it is well established that the government remains liable for breach of contract when it terminates a contract in bad faith or abuses its discretion to terminate the contract. See Krygoski Construction Co., 94 F.3d at 1541; TigerSwan, Inc., 110 Fed.Cl. at 345. The Federal Circuit, however, has been less than clear concerning just what constitutes bad faith or an abuse of discretion. As some commentators have noted: “The convenience termination cases give little guidance on abuse of discretion or bad faith. The bad faith and abuse of discretion standards have been, at best, only superficially examined in the opinions, and many inconsistencies exist between the facts of the cases and the language of the decisions.” John Cibinic, Jr., James F. Nagle, & Ralph C. Nash, Jr., Administration of Government Contracts, 949-50 (5th ed. 2016).
Nevertheless, the case law suggests that terminating a contract solely to obtain a better price from another contractor constitutes a bad faith termination or an abuse of discretion. See Krygoski Construction Co., 94 F.3d at 1541 (“A contracting officer may not terminate for convenience in bad faith, for example, simply to acquire a better bargain from another source”); TigerSwan, Inc., 110 Fed.Cl. at 347 (“the ‘abuse of discretion’ standard has been satisfied when the government has terminated a contract for convenience in order to get a better price for itself’); NCLN20, Inc. v. United States, 99 Fed.Cl. 734, 759 (2011) (The “Federal Circuit and its predecessor ... have held that entering a contract with no intention of honoring it, or terminating a contract to find a better bargain, are grounds for invalidating a termination for convenience”).[7] For example, in Northrop Grumman Corp. v. *167 United States the Court held that NASA properly terminated a contract to build a space station for convenience. In reaching this holding, the Court placed particular emphasis on the fact that NASA “did not terminate this contract for convenience ‘simply’ to acquire a better bargain from another source, even if that may have been the result.” 46 Fed.Cl. 622, 627 (2000). Rather, NASA’s motivation for terminating the contract was to save the space station program, which was in serious political jeopardy due to significant cost overruns and needed to be scaled down. Id.
Massachusetts appellate courts have yet to address what if, any, limits apply to a state or local government’s discretion to exercise a termination for convenience clause, more specifically: Will Massachusetts adopt the bad faith and abuse of process standard established by the Federal Circuit and if so, how will those terms be defined in this context? There is only one published decision dealing with this kind of contract provision: Morton Street, LLC v. Sheriff of Suffolk Cnty., 453 Mass. 485 (2009). That case concerned a sheriffs early termination of a lease and the landlord’s subsequent suit for breach of contract. The Court found that the sheriff was not liable for breach because he had lawfully terminated the lease pursuant to a termination for convenience clause. In so ruling, the Court declined “to determine the full extent of the sheriffs discretion to terminate a contract” under the provision, but found the termination justified because the sheriff had lost the outside funding needed to pay for the lease and so could no longer afford it. Id. at 494.[8]
The decision can be read to suggest that the SJC would adopt the limitations imposed by the Federal Circuit on the use of termination for convenience provisions and, in particular, the requirement that there must be some predicate for the termination other than the opportunity to obtain a better price for the items or services procured. In this case, at least, the Court chose not to rely on an expansive interpretation of the language of the termination provision but rather emphasized the loss of funding that prevented the Sheriff from continuing to rent the premises and that the Landlord had been informed at lease inception that funding could be lost.
In the present case, the MBTA argues that the allegations in the complaint, if true, fail to establish that the MBTA either acted in bad faith or abused its discretion when it terminated the Prime Contract. The court disagrees. The complaint alleges that the MBTA’s sole reason for terminating its two-year ULSD contract with Prime was to get a better bargain through the Statewide Contract. This court finds persuasive the federal case law cited above which holds that a plaintiff can establish bad faith or abuse of discretion by proving that the termination occurred simply to obtain a better price from another contractor, especially where the contract is of such brief duration. This allegation, therefore, is sufficient to state a claim.
ORDER
For the reasons stated, the defendant’s motion to dismiss is DENIED.

 At the hearing on the motion, the Court asked the parties to agree on a stipulated statement of facts regarding whether and to what extent the Commonwealth’s statewide fuel contract was in effect during the relevant period and available to the MBTA. The parties were not able to do so. Nevertheless, in lieu of the joint statement, the MBTA submitted a Supplemental Statement of Facts in Support of its Motion to Dismiss. The Court accepts some of the facts set out in the statement in this background section because they are found either in the complaint, its exhibits, public records, or Massachusetts acts and regulations.

 The ULSD delivery locations for the MBTA are within zone 1.

 The MBTA initially awarded the contract to Sprague Oil but Prime successfully appealed the award. Because of the delay resulting from the appeal, Prime’s first delivery was made on September 1, 2015. The MBTA agreed that the two-year contract period originally scheduled to begin on July 1, 2015 would begin on September 1, 2015.

 The Pacheco Law governs the privatization of services currently provided by public sector employees.

 While federal regulations make the use of such clauses mandatory in almost all federal procurement contracts, the same is not true in most states. See Roin, supra, 292. Massachusetts, for example, does not appear to make the use of such clauses mandatory.

 The Court notes that reference to federal case law is particularly appropriate in this case because the termination for convenience provision in the Prime Contract explicitly references and incorporates the Federal Acquisition Regulations.

 But see Ronin, supra, at 290 & n.66 (acknowledging the opinions cited above but concluding that “[i]t is . . . unclear whether contracts can be terminated solely due to post-contract price changes”).

 The Court also noted that at the time the landlord entered the lease, it was given written notice that the lease could be terminated if funding was lost. Id.