# United States Court of Appeals
## For the First Circuit

No. 17-1372

INSURANCE BROKERS WEST, INC.,

Plaintiff, Appellant,

v.

LIQUID OUTCOME, LLC, f/k/a ASTONISH RESULTS, LLC,

d/b/a INTYGRAL,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Matthew W. Sparks, with whom Rosenberg Johnson & Sparks, PLLC,
Charles S. Beal, and Beal Law, LLC were on brief, for appellant.
    Robert J. Cavanagh, Jr., with whom Blish & Cavanagh, LLP was
on brief, for appellee.

October 23, 2017

**KAYATTA**, <u>Circuit Judge</u>. This appeal turns on whether it is certain that Plaintiff Insurance Brokers West, Inc. ("IBW") has no chance to recover in excess of $75,000 should it prevail on its claim for breach of contract against Liquid Outcome, LLC, formerly known as Astonish Results, LLC ("Astonish"). For the following reasons, we agree with the district court that IBW certainly has no such chance. We therefore affirm the dismissal of IBW's complaint for failure to meet the amount-in-controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332.

## I. Background

The limited facts relevant to jurisdiction are undisputed for purposes of considering the issue on appeal. IBW is an insurance agency incorporated and located in California. Astonish is a Delaware marketing firm, with its principal place of business in Rhode Island. In December 2010, IBW and Astonish entered into an agreement (the "Agreement"), pursuant to which Astonish agreed to provide digital marketing services, such as website development and design, and IBW agreed to pay Astonish for those services. IBW agreed to pay an initial "Set Up Fee" of $8,000 due immediately, as well as $2,695 per month for sixty months. Four years later, in December 2014, IBW and Astonish executed an amendment (the "Amendment") to the Agreement. Both parties agree that they executed the Amendment because of a dispute regarding Astonish's performance of the Agreement.

Three parts of the Amendment are relevant to this appeal. First, Astonish agreed to "complete a website theme-based redesign and website content re-optimization at no additional cost to [IBW]," in addition to performing its original duties under the Agreement, which were incorporated into the Amendment. Second, Astonish agreed to accept reduced monthly payments from IBW for the remaining eighteen months of the contract term, totaling $22,550. Third, the Amendment contained a release provision (the "Release"), stating the following:

> From and after the date hereof, [IBW] agrees it will not sue for any reason and hereby releases and forever discharges Astonish from any and all claims, actions, damages, and losses whatsoever known and unknown as of the date of this Amendment, except those claims which occur in the future as a result of a material default in Astonish's performance of this Amendment.

Twenty-two months later, IBW filed suit against Astonish in federal court, alleging that Astonish breached the Agreement both before and after it was amended. IBW's complaint asserted diversity jurisdiction but did not estimate its damages stemming from Astonish's alleged breaches. After Astonish moved to dismiss IBW's complaint for lack of jurisdiction, IBW filed an amended complaint. In its amended complaint, IBW estimated its damages as exceeding $140,000, based on all the payments IBW had made to Astonish both before and after the Amendment. IBW did not specify how it calculated $140,000, but presumably it derived the estimate

by summing the $8,000 set up fee, forty-two monthly payments at $2,695 per month (pursuant to the Agreement), thirteen monthly payments at $1,350 per month (pursuant to the Amendment), and five monthly payments at $1,000 per month (pursuant to the Amendment).

Astonish moved to dismiss the amended complaint, on the basis that IBW's claims did not meet the amount-in-controversy requirement for diversity jurisdiction. Astonish argued that the bulk of IBW's alleged damages occurred prior to the execution of the Amendment and, pursuant to the Release, IBW had released those claims. The district court granted Astonish's motion to dismiss, finding: that the Release "clearly and unambiguously prevents IBW from pursuing claims for pre-Amendment conduct"; that IBW's post-Amendment claims do not exceed $75,000; and that IBW therefore fails to meet the amount-in-controversy requirement for diversity jurisdiction. IBW timely appealed.

## II.  Discussion

United States district courts have original jurisdiction in all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Neither party disputes that diversity of citizenship exists in this case. The only issue on appeal is whether the amount-in-controversy requirement is met. We decide that issue de novo. See Stewart v.

- 4 -

Tupperware Corp., 356 F.3d 335, 337 (1st Cir. 2004); Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001).

The Supreme Court long ago established the test for determining whether the amount-in-controversy requirement is satisfied:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938) (footnotes omitted); see also Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41-45 (1st Cir. 2012) (applying the St. Paul Mercury test and affirming the district court's dismissal based on the plaintiff's failure to adequately support the alleged amount in controversy).

In the absence of a convincing argument to the contrary, we presume that IBW makes its claim in good faith. So we limit our inquiry to determining whether it is "a legal certainty that the claim is really for less than the jurisdictional amount." St. Paul Mercury, 303 U.S. at 289; see also Esquilín-Mendoza v. Don King Prods., Inc., 638 F.3d 1, 4 (1st Cir. 2011). In so doing, we look to Rhode Island substantive law, as the parties have agreed.

IBW makes no claim that its post-Amendment damages, by any measure, could exceed or even approach $75,000. Rather, IBW contends that Astonish's alleged breach of the Amendment entitles IBW to recover all the damages it suffered, both before and after the parties signed the Amendment, and that those damages exceed $75,000. This entitlement arose, IBW argues, either because the Release was conditioned on performance of the Amendment, or because IBW was, in any event, entitled to restitution of all the amounts paid to Astonish over the entire contract term.

We address first IBW's argument that the Release was conditioned on Astonish's performance of the Amendment. In presenting this argument, IBW labors hard to characterize the Amendment as an accord (requiring satisfaction), rather than as a novation or substitute contract. Notably, Rhode Island law regards substitute contracts as simply one type of an accord and satisfaction. See Salo Landscape & Constr. Co. v. Liberty Elec. Co., 376 A.2d 1379, 1381 (R.I. 1977). More importantly, Rhode Island law grants little if any significance to the label affixed to an agreement, focusing instead on its substance. See id. at 1382 ("[I]t matters not whether we refer to this transaction as an accord and satisfaction or as a rescission followed by the formation of a new contract . . . ."); see also Newport Plaza Assocs., L.P. v. Durfee Attleboro Bank (In re Newport Plaza), 985 F.2d 640, 644 (1st Cir. 1993) (characterizing the Rhode Island

- 6 -

Supreme Court on this subject as "manifest[ing] a concern with substance rather than form"); Weaver v. Am. Power Conversion Corp., 863 A.2d 193, 198 (R.I. 2004) (noting that the Rhode Island Supreme Court has "overlooked fine common law distinctions" between types of accords and substitute contracts).

Here, we have only substance, not form, because the Amendment bears no label that speaks either of accord and satisfaction or novation. In gauging that substance, we look first to the intent of the parties, as manifested in the language of the written contract. See Warner v. Rossignol, 513 F.2d 678, 682 (1st Cir. 1975) ("Most jurisdictions . . . hold that whether compromises are to be styled an 'accord executory' or a substituted contract, depends on the intention of the parties."); Weaver, 863 A.2d at 198 ("It is wholly a question of intention, to be determined by the usual processes of interpretation, implication, and construction." (quoting 6 Corbin on Contracts § 1293 at 190 (1962))). And we also stop with the language of the contract when it is unambiguous and where, as here, neither party claims any exception to the dictates of a plainly written contract. See In re Newport Plaza, 985 F.2d at 645 ("Where the language of a contract is clear and unambiguous, the Rhode Island Supreme Court has generally interpreted the parties' intent based solely on the written words." (emphasis added)).

- 7 -

The language of the Amendment on the issue at hand is unambiguous. It makes no mention of any condition upon which the effectiveness of the Release hinges. Rather, the Release plainly became operative "[f]rom and after the date hereof"; it precludes suit "for any reason"; and its discharge of claims for breach of the Agreement is both categorical and "forever." Adding belt to suspenders, the language of the Release directly addresses the subject of a material default by Astonish in performing under the Amendment, allowing IBW to pursue "those claims which occur in the future as a result of [such] default." To argue that IBW can also pursue claims that accrued in the past is to argue that we should rewrite the Amendment.

This brings us to IBW's second argument: that a claim for restitution could recover all the consideration IBW provided under the Amendment, and the consideration it provided was not just the post-Amendment fees, but also the surrender of its pre-Amendment claims. The value of those claims would supposedly be enough, added to the post-Amendment payments, to result in restitution exceeding $75,000.

IBW does not explain why restitution would even be an available option. Under Rhode Island law, the traditional measure of damages in an action for breach of contract is the amount that "will serve to put the injured party as close as is reasonably possible to the position he would have been in had the contract

- 8 -

been fully performed." George v. George F. Berkander, Inc., 169 A.2d 370, 372 (R.I. 1961); see also Sophie F. Bronowiski Mulligan Irrevocable Tr. v. Bridges, 44 A.3d 116, 120 (R.I. 2012). This measure is also known as expectation damages. See Restatement (Second) of Contracts § 347 cmt. a (explaining that damages based on a party's "expectation interest" will "put him in as good a position as he would have been in had the contract been performed"). IBW makes no claim that its expectation damages would even approach $75,000, nor does it assert that it is not possible to estimate those damages.

Even putting this oversight to one side, the fact remains that success on the theory posited by IBW would require not just restitution, but also rescission of the Amendment. Otherwise, the theory is simply a backdoor attempt to disregard the binding Release, which explicitly limits IBW to suing on claims that arise "in the future," i.e. after the Amendment was signed. Rescission, in turn, is not a claim or theory IBW advanced in the complaint. Nor did IBW allege any facts that even remotely invite a remedy of rescission. Cf. McNulty v. Chip, 116 A.3d 173, 183 (R.I. 2015) ("[A] party who has been induced by fraud to enter into a contract may elect . . . to rescind the contract . . . ." (first alteration in original) (quoting Stebbins v. Wells, 766 A.2d 369, 372 (R.I. 2001))). Nor was counsel able at oral argument to provide us with any conceivable basis for rescission. Without rescission of the

Release, Astonish is correct:  The most IBW could recover in restitution, assuming it is entitled to that remedy, is $22,550.

The Agreement itself closes the door on any possibility that other, plausibly conceivable measures of IBW's damage might exceed $22,550.  The Agreement provides that Astonish's "liability for the breach of any provision in this agreement shall not exceed, in the aggregate an amount equal to the monthly payment set forth in paragraph 3B above."  It goes on to state that Astonish "will not be liable for loss of profits or revenue or for incidental, consequential or punitive damages."  IBW makes no argument that these agreed-upon limitations on its potential recovery are unenforceable.

It is therefore certain as a matter of law that IBW cannot recover more than $75,000.  In order to discharge our duty "to police the border of federal jurisdiction," Spielman, 251 F.3d at 4, we must affirm the district court's dismissal.

### III.  Conclusion

For the foregoing reasons, we affirm.