NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12370


A.L. PRIME ENERGY CONSULTANT, INC. vs. MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY.



Suffolk.     January 5, 2018. - May 2, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.



Massachusetts Bay Transportation Authority, Contract.  Contract,
    Termination, Contract clause, Performance and breach,
    Implied covenant of good faith and fair dealing.




Civil action commenced in the Superior Court Department on
September 6, 2016.

A motion to dismiss was heard by Mitchell H. Kaplan, J.,
and a question of law was reported by him to the Appeals Court.

The Supreme Judicial Court granted an application for
direct appellate review.


Kevin P. Martin (Joshua J. Bone also present) for the
defendant.
Michael P. Murphy for the plaintiff.


LENK, J.  This case concerns the proper construction of the

termination for convenience clause in a contract between the

Massachusetts Bay Transportation Authority (MBTA) and A.L. Prime

Energy Consultant, Inc. (Prime), a private fuel supplier. A termination for convenience clause permits a contracting public entity, under certain circumstances, to cancel a procurement contract without exposure to liability for breach of contract. See Maxima Corp. v. United States, 847 F.2d 1549, 1552 (Fed. Cir. 1988). Termination for convenience clauses originated in Federal procurement contracts, and have given rise to a body of Federal case law defining Federal entities' termination rights. Some State and municipal procurement contracts also contain termination for convenience clauses, but the case law interpreting them is sparse. As a result, some State courts have looked to Federal precedent for guidance when construing a termination for convenience clause in a State or municipal procurement contract.

We are asked to determine first, whether, in Massachusetts, a termination for convenience clause in a State or municipal procurement contract should be construed according to Federal precedent; and second, if not, whether Massachusetts law permits a State or municipal public entity to invoke a termination for convenience provision solely to obtain a more favorable price. This dispute began when the MBTA terminated the MBTA-Prime contract (contract), in order to procure fuel more economically through an existing Statewide contract with a different vendor. Prime filed a complaint against the MBTA for breach of contract

and breach of the implied covenant of good faith and fair dealing, claiming that the MBTA's termination must be evaluated according to Federal case law.  Prime further argued that, under Federal precedent, a public entity may not invoke a termination for convenience clause solely to secure a lower price.  A Superior Court judge agreed, and denied the MBTA's motion to dismiss Prime's complaint.  The judge then granted the MBTA's motion to report the case for interlocutory review pursuant to Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996), and we allowed the MBTA's motion for direct appellate review.

The Federal standard for construing a termination for convenience provision in a governmental procurement contract departs from the general rule that contracts must be enforced according to their plain meaning.  We decline to import this Federal case law, which conflicts with Massachusetts precedent indicating that basic contract principles determine the proper construction of a termination for convenience clause.  We conclude that a State or municipal entity may terminate a procurement contract for its convenience in order to achieve cost savings, where, as here, the contractual language permits, and in the absence of contrary applicable law.  As a result, we conclude further that the Superior Court judge erred in denying the motion to dismiss on the ground that a public entity may not invoke a termination for convenience clause in a State or

municipal public procurement contract in order to secure a lower price.

1.  Background.  We summarize the facts alleged in the plaintiff's complaint, Polay v. McMahon, 468 Mass. 379, 382 (2014), as well as relevant "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" (citation omitted).  Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000).

In January, 2015, the MBTA issued an invitation for bids to supply it with ultra low sulfur diesel fuel (ULSD) for two years.  The MBTA's procurement of the ULSD was supported with Federal assistance awarded by the Federal Transit Administration.  See note 10, infra.  The MBTA attached to its invitation for bids the entire contract that the successful bidder would sign with the MBTA.  This contract included the following provision, entitled "Termination for Convenience":

> "Termination for Convenience.  The [MBTA] may, in its sole discretion, terminate all or any portion of this Agreement or the work required hereunder, at any time for its convenience and/or for any reason by giving written notice to the Contractor thirty (30) calendar days prior to the effective date of termination or such other period as is mutually agreed upon in advance by the parties.  If the Contractor is not in default or in breach of any material term or condition of this Agreement, the Contractor shall be paid its reasonable, proper and verifiable costs in accordance with generally accepted government contracting principles as set forth in the Federal Acquisition Regulations, including demobilization and contract closeout costs, and profit on work performed

and Accepted up to the of termination to the extent previous payments made by the [MBTA] to the Contractor have not already done so.  Such payment shall be the Contractor's sole and exclusive remedy for any Termination for Convenience, and upon such payment by the [MBTA] to the Contractor, the [MBTA] shall have no further obligation to the Contractor.  The [MBTA] shall not be responsible for the Contractor's anticipatory profits or overhead costs attributable to unperformed work."  (Emphasis supplied.)

In July, 2015, the MBTA awarded the ULSD contract to Prime, and agreed that the contract would take effect in September of that year.[1]  July, 2015, also saw the creation of the Fiscal and Management Control Board through legislative enactment.  See St. 2015, c. 46, §§ 199-208. This body is charged with, among other things, securing the fiscal stability of the MBTA.  See St. 2015, c. 46, § 200 (f).

Separately, in May, 2015, the Commonwealth issued a request for response (RFR) seeking bids for a Statewide supply of ULSD for executive branch agencies.  Dennis Burke, Inc. (Burke), was the successful bidder, and executed a contract with the Commonwealth in June, 2015.

Almost one year later, in April, 2016, the MBTA told Prime that the MBTA could achieve cost reductions by opting into the

---

[1] The Massachusetts Bay Transportation Authority (MBTA) initially had awarded the contract to a different bidder.  A.L. Prime Energy Consultant, Inc. (Prime), appealed from this decision on the ground that it was based on incorrect price calculations, and subsequently was awarded the contract.

Statewide ULSD contract with Burke. On July 12, 2016, the MBTA notified Prime in writing that it intended to terminate the contract, pursuant to the termination for convenience provision, effective August 15, 2016. Later that month, Prime demanded that the MBTA rescind its termination of the contract. The MBTA replied in August that its termination was proper, and would allow the MBTA to "utiliz[e] economies of scale available through the Commonwealth's existing blanket fuel contract," and encouraged Prime to submit a termination claim.[2]

In September, 2016, Prime filed a complaint against the MBTA in the Superior Court. The complaint asserted claims for breach of contract and breach of the implied covenant of good faith and fair dealing, and sought "compensatory damages, costs of suit, reasonable attorney[']s fees, interest, and such further relief as the court may deem just and equitable." Although Prime's complaint suggests that the MBTA incorrectly calculated its potential cost savings, its claims rest on the premise that the MBTA terminated the contract in order to secure a lower price for ULSD through the Statewide contract.

In October, 2016, the MBTA moved to dismiss the complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).

---

[2] The record is silent as to whether the MBTA paid Prime the reimbursement costs required in the event of a termination for convenience, but Prime has not alleged that the MBTA failed to provide this payment.

In March, 2017, a Superior Court judge denied the motion.  The judge's decision was based on Federal case law interpreting termination for convenience clauses in Federal procurement contracts.  The judge reasoned that, under that precedent, Prime could show that the MBTA acted improperly if Prime proved that the MBTA had terminated the contract solely to obtain a better price from another contractor.

In April, 2017, the MBTA filed a motion for reconsideration or, in the alternative, to report the case for interlocutory review pursuant to Mass. R. Civ. P. 64.  The judge denied the motion for reconsideration but allowed the rule 64 motion.  The judge stayed all proceedings in the Superior Court pending interlocutory appeal, and reported the following question to the Appeals Court:

> "May a government agency[3] invoke a termination for convenience clause contained in a procurement contract for the purchase of goods for the sole reason that it has learned of an opportunity to purchase the same goods at a lower price from another vendor?"

We allowed the MBTA's application for direct appellate review.[4]

---

[3] Although the MBTA is a political subdivision akin to "a county, a regional school district, or a fire, improvement, or incinerator district," see Massachusetts Bay Transp. Auth. v. Boston Safe Deposit & Trust Co., 348 Mass. 538, 543 (1965); G. L. c. 161A, § 2, we construe the reported question as applying to the MBTA.

[4] Although the trial judge's report takes the form of a question of law, we evaluate the propriety of the judge's decision denying the MBTA's motion to dismiss.  See Maher v.

2.  Discussion.  We are asked to determine, as a matter of first impression, whether to construe a termination for convenience clause in a State or municipal public procurement contract according to Federal case law concerning such clauses in Federal procurement contracts.  We first discuss this precedent, which provides that a court must evaluate whether a Federal government entity acted in bad faith or abused its discretion in terminating for its convenience.  See, e.g., Krygoski Constr. Co. v. United States, 94 F.3d 1537, 1541 (Fed. Cir. 1996), cert. denied, 520 U.S. 1210 (1997) (Krygoski).  We then compare the Federal standard to our own jurisprudence, which indicates that a termination for convenience clause in a public procurement contract should be interpreted under "general contract principles."  See Morton St. LLC v. Sheriff of Suffolk County, 453 Mass. 485, 490 (2009) (Morton St.).  Because the State and Federal approaches cannot be reconciled, we conclude that Massachusetts law must determine the proper construction of a termination for convenience clause.

In this case, the contract unambiguously vests the MBTA with the discretion to terminate "for any reason," a phrase which necessarily includes the decision to cut costs.  We identify nothing in Massachusetts law to indicate that this,

Retirement Bd. of Quincy, 452 Mass. 517, 522 n.9 (2008), cert. denied, 556 U.S. 1166 (2009); Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996).

standing alone, is an impermissible reason to terminate a contract for convenience. Nor does construing the termination for convenience provision as written render the contract illusory, because the contract required the MBTA to provide Prime with valuable consideration, and placed certain restrictions on the MBTA's termination right. As a result, we conclude that Prime has not alleged sufficient facts to demonstrate that the MBTA committed a breach of the contract or the implied covenant of good faith and fair dealing. The Superior Court judge therefore erred in denying the MBTA's motion to dismiss on the ground that Prime had not stated a viable claim upon which relief could be granted.

a. Standard of review. We review an order on a motion to dismiss de novo. See Galiastro v. Mortgage Elec. Registration Sys., Inc., 467 Mass. 160, 164 (2014); Shapiro v. Worcester, 464 Mass. 261, 266 (2013). Factual allegations are sufficient to survive a motion to dismiss if they plausibly suggest that the plaintiff is entitled to relief. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). Resolution of this case turns on the proper construction of the contract before us; this is a question of law, which we also review de novo. See James B. Nutter & Co. v. Estate of Murphy, 478 Mass. 664, 667 (2018).

b. Applicable law. We first must determine whether to construe the termination for convenience provision according to

Federal precedent.  Certain background is helpful in understanding Prime's argument that Federal law should guide our analysis.

In general, a termination for convenience clause permits a contracting public entity, under certain circumstances, to cancel a procurement contract without exposure to liability for breach of contract.  See Maxima Corp., 847 F.2d at 1552.  If a public entity properly invokes a termination for convenience clause, the contractor is not entitled to common-law damages; rather, the remedy is limited to "costs incurred, profit on work done and the costs of preparing the termination settlement proposal" (citation omitted).  Id.  The concept of terminating a procurement contract for the Federal government's convenience developed during the Civil War, as a way to avoid military procurement costs following the completion of a war effort.  See Krygoski, 94 F.3d at 1540.  Congress subsequently enacted new legislation governing terminations for convenience after each of the World Wars.  See id. at 1541.  By the end of the Twentieth Century, the principle had been extended beyond the military context, and Federal law required that many Federal procurement contracts contain a termination for convenience clause.  See id.; 48 C.F.R. § 49.502.  Indeed, Federal regulations now provide uniform language for termination provisions that must be included in certain Federal procurement contracts, permitting

termination when it is "in the Government's interest."
48 C.F.R. §§ 52.249-1 to 52.249-6.[5]

Judicial interpretation of this language has evolved along with the changes in statutory and regulatory requirements, primarily in the United States Court of Appeals for the Federal Circuit and the Court of Claims, which was the predecessor to the United States Court of Federal Claims.[6] See Krygoski, 94 F.3d at 1541-1544; South Corp. v. United States, 690 F.2d 1368, 1369 (Fed. Cir. 1982); Torncello v. United States, 681 F.2d 756, 763-766 (Ct. Cl. 1982). Following some confusion concerning the correct standard, the United States Court of Appeals for the Federal Circuit settled that a termination for convenience is

---

[5] The Federal acquisition regulation provides uniform termination for convenience clauses for seven different types of procurement contracts. See 48 C.F.R. §§ 52.249-1 to 52.249-7. These clauses are distinct from one another, but all contain language permitting termination when it is "in the Government's interest," with one exception for termination clauses required in contracts for architect-engineer services when a fixed-price contract is contemplated, which provides that the government may terminate "for the Government's convenience or because of the failure of the Contractor to fulfill the contract obligations." See 48 C.F.R. § 52.249-7. The United States Court of Appeals for the Federal Circuit applied the bad faith or abuse of discretion standard in considering the "in the Government's interest" language provided by 48 C.F.R. § 52.249-2. See Krygoski Constr. Co. v. United States, 94 F.3d 1537, 1544-1545 (Fed. Cir. 1996), cert. denied, 520 U.S. 1210 (1997).

[6] The United States Court of Appeals for the Federal Circuit is a specialized court that hears appeals from the United States Court of Federal Claims, which has jurisdiction to review appeals of most decisions by Federal contracting officers. See 28 U.S.C. § 1295(a)(3); 41 U.S.C. § 7104(b)(1).

proper so long as a government entity does not act in bad faith or abuse its discretion.  See Krygoski, supra at 1541.

The United States Court of Appeals for the Federal Circuit's precedent as to abuse of discretion "suggest[s] that [the] court will avoid a finding of abused discretion when the facts support a reasonable inference that the contracting officer terminated for convenience in furtherance of statutory requirements for full and open competition."  See id. at 1544, citing Caldwell & Santmyer, Inc. v. Glickman, 55 F.3d 1578, 1582 (Fed. Cir. 1995) (Caldwell), and Salsbury Indus. v. United States, 905 F.2d 1518, 1521 (Fed. Cir. 1990), cert. denied, 498 U.S. 1024 (1991); 41 U.S.C. § 3301(a)(1) (requiring full and open competition in procurement by Federal executive branch agencies).  See also discussion, infra.  With respect to the bad faith standard, in order to succeed on a claim that a termination for convenience clause was invoked in bad faith, a contractor must overcome the presumption that a contracting officer has acted in good faith, by showing "'well-nigh, irrefragable proof' that the government had a specific intent to injure it."  Caldwell, supra at 1581, quoting Torncello, 681 F.2d at 770.[7]  The Court of Federal Claims has explained that

---

[7] The United States Court of Appeals for the Federal Circuit has concluded that the requirement for "well-nigh, irrefragable proof" approximates the "clear and convincing evidence"

"[a] claim for breach of contract based on breach of the implied duty of good faith and fair dealing is distinct from a claim for breach of contract based on an improper termination for convenience" under Federal law.  See TigerSwan, Inc. v. United States, 110 Fed. Cl. 336, 345 (2013).[8,9]

Our own precedent concerning termination for convenience clauses in public procurement contracts is far less extensive.  We have had one previous occasion to construe such a clause.  See Morton St., 453 Mass. at 486-487.  In Morton St., supra at 494, we held that where a sheriff lost outside funding to pay a

---

standard.  See Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239-1240 (Fed. Cir. 2002) (Am-Pro Protective).

[8] The Court of Federal Claims held in TigerSwan, Inc. v. United States, 110 Fed. Cl. 336, 345 (2013), quoting Am-Pro Protective, 281 F.3d at 1239-1240, that "[t]o establish a breach based on bad faith in this context, a contractor must present clear and convincing evidence that the government's termination was made with the 'intent to injure' the contractor."  By contrast, under Federal common law, "[p]arties can show a breach of the implied duty of good faith and fair dealing by proving lack of diligence, negligence, or a failure to cooperate." TigerSwan, Inc., supra.  "[P]roof of 'bad faith' is not required to show a breach of the implied duty of good faith and fair dealing in most cases," and "[e]vidence of government intent to harm the contractor is not ordinarily required."  Id. at 346.  But see Austin v. United States, 118 Fed. Cl. 776, 790 (2014) (rejecting claim for breach of implied duty of good faith and fair dealing against Federal government entity, based on conclusion that "the record does not reflect that any government official acted with the specific intent to injure plaintiffs").

[9] A claim that a Federal public entity has invoked a termination for convenience clause in bad faith also is distinct from a claim for breach of the implied duty of good faith and fair dealing under Massachusetts law.  See discussion, infra.

lease, she lawfully could terminate the lease under a termination for convenience provision. We applied "general contract principles," looking to the unambiguous contractual language and the dictionary definition of "convenience." See id. at 490, 494. We concluded that "losing the funding for the lease is plainly an inconvenience justifying termination" because, to continue the lease, the sheriff would have been required to reduce or eliminate funding for other obligations. Id. at 494.

In Morton St., the parties did not raise, and the court did not address, the question whether to import Federal precedent when construing a termination for convenience provision. See id. at 490-494. The court interpreted the termination for convenience clause according to "general contract principles." Id. at 490. This approach is consonant with the canon that "in general the law applicable to public contracts is the same as that applicable to private contracts." R. Zoppo Co. v. Commonwealth, 353 Mass. 401, 404 (1967).

The Federal standard, by contrast, is a gloss that has settled on the uniform language found in certain Federal termination for convenience clauses, informed partly by Federal procurement requirements that have no application to State or municipal agencies. See Krygoski, 94 F.3d at 1544 ("court will avoid a finding of abused discretion when the facts support a

reasonable inference that the contracting officer terminated for convenience in furtherance of statutory requirements for full and open competition"); 41 U.S.C. § 3301(a)(1) ("an executive agency in conducting a procurement for property or services shall . . . obtain full and open competition through the use of competitive procedures in accordance with the requirements of [the Federal Procurement Policy] and the Federal Acquisition Regulation").  The Federal acquisition regulation mandates that certain Federal procurement contracts include a termination for convenience clause, and provides stock language for them.  See 48 C.F.R. §§ 49.502, 52.249-1 to 52.249-6.  Non-Federal entities, however -- such as the MBTA -- may craft their own termination for convenience clauses when drafting procurement contracts, because they are not bound by the Federal acquisition regulation.  See 48 C.F.R. §§ 1.104, 2.101.  As a result, for example, the contract here allows the MBTA to terminate "in its sole discretion," and "for any reason," rather than allowing termination only where the termination is "in the Government's interest."

Our precedent instructs courts to examine how a contract, by its plain language, defines the parties' rights.  See Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992).  The Federal standard, conversely, requires inquiry into whether a public entity has abused its discretion or acted in bad faith.

Embracing the Federal approach would require Massachusetts courts, in construing termination for convenience clauses, to apply the meaning that Federal courts have assigned to language provided by Federal regulations -- regardless of the specific contractual language in front of them.  The Federal standard, therefore, cannot be reconciled with "general contract principles" provided by Massachusetts law, Morton St., 453 Mass. at 490, including the "elementary" axiom that "an unambiguous agreement must be enforced according to its terms."  Schwanbeck, supra.[10]

Prime's argument that, by referencing the Federal acquisition regulation, the contract incorporates Federal case

---

[10] Although Prime does not discuss this fact, we note that the MBTA's procurement of fuel under section 6.1.1 of the contract is supported by Federal funding awarded by the Federal Transit Administration (FTA).  The Federal acquisition regulation, however, does not apply to procurements conducted with Federal assistance by non-Federal entities, such as the MBTA.  See 48 C.F.R. §§ 1.104, 2.101; Federal Transit Administration, Circular No. FTA C 4220.1F, at 9 (rev. Mar. 18, 2013) (FTA Circular).  A different Federal regulation instructs that contracts supported by Federal funding must include a termination for convenience clause, but leaves State and municipal recipients of Federal funds free to craft their own contractual language.  See 2 C.F.R. Part 200, Appendix II(B); FTA Circular, supra at 13.  Compare 48 C.F.R. §§ 52.249-1 to 52.249-7 (requiring specific language for termination for convenience clauses in Federal procurement contracts).  The MBTA's receipt of Federal funding does not alter our conclusion that Massachusetts law must govern construction of the termination for convenience clause.  See Linan-Faye Constr. Co. v. Housing Auth. of Camden, 49 F.3d 915, 917, 920 (3d Cir. 1995) (State law governs termination for convenience clause in State or municipal contract drafted by Federal funding recipient, using forms provided by Federal agency, if controlling State law exists).

law, is unavailing. The contract states that, in the event of termination for convenience, "the Contractor shall be paid its reasonable, proper and verifiable costs in accordance with generally accepted government contracting principles as set forth in the Federal Acquisition Regulations." This language does no more than provide that, once the MBTA terminates for its convenience, Prime's reimbursement is to be determined under the principles provided by the Federal acquisition regulation. See, e.g., 48 C.F.R. § 31.205-42 (cost principles in event of termination). The single reference to the Federal acquisition regulation does not incorporate the Federal standard for interpreting a termination for convenience clause, as Prime seems to suggest. "[T]he scope of a party's obligation cannot 'be delineated by isolating words and interpreting them as though they stood alone.'" Starr v. Fordham, 420 Mass. 178, 190 (1995), quoting Boston Elevated Ry. v. Metropolitan Transit Auth., 323 Mass. 562, 569 (1949). The MBTA's power to terminate is expressly defined by other language in the termination provision; disregarding this language would belie the "general rule of contract construction" "that contracts should be construed as a whole." See Polaroid Corp. v. Rollins Envtl. Servs. (NJ), Inc., 416 Mass. 684, 690 (1993).

Neither Prime's additional contention that a termination for convenience clause -- construed according to its plain

language -- would deprive a contractor of any consideration, nor the fact that certain other States have adopted the Federal standard, persuades us that we should import Federal precedent that would conflict with State law. Prime suggests that, in order to ensure that public procurement contracts provide contractors with real consideration, we must adopt the Federal standard. We recognize that Federal case law might represent "an effort to [rein] back on the government's non-negotiable, statutorily-conferred entitlement to terminate its contracts as it pleases." See Handi-Van, Inc. v. Broward County, 116 So. 3d 530, 538 (Fla. Dist. Ct. App. 2013). Public entities, however, are constrained by the general contract principle that "a promise that binds one to do nothing at all is illusory and cannot be consideration." Graphic Arts Finishers, Inc. v. Boston Redev. Auth., 357 Mass. 40, 43 (1970). A public entity's power unilaterally to walk away from a contract, without restrictions, therefore would render the contract illusory. See Mb Oil Ltd. Co. v. Albuquerque, 382 P.3d 975, 978 (N.M. Ct. App. 2016) (government's unlimited right to terminate could render contract illusory).[11] That is a situation, however, not confronting us in the contract at issue here.[12]

---

[11] We leave for another day the question whether a public entity may terminate a contract for its convenience in order to rebid the contract in search of a lower price. See Petricca Constr. Co. v. Commonwealth, 37 Mass. App. Ct. 392, 392-397

We recognize that some State courts have consulted Federal precedent in construing a termination for convenience clause in a State or municipal contract.  See, e.g., Krygoski, 94 F.3d at 1542, 1544; RAM Eng'g & Constr., Inc. v. University of Louisville, 127 S.W.3d 579, 584, 587 (Ky. 2003) (applying now defunct Federal standard permitting termination only under changed circumstances).  Nonetheless, there is no consensus concerning whether or how to apply the Federal standard.  See, e.g., Old Colony Constr., LLC v. Southington, 316 Conn. 202, 204 n.1 (2015) ("Unlike [F]ederal contracts, no [S]tate regulations dictate the requirements and obligations attendant to termination for convenience in municipal contracts.  As in the present case, such obligations generally are dictated by the

---

(1994) (G. L. c. 30, § 39M, which allows awarding authority to "reject any and all bids, if it is in the public interest to do so," did not permit State entity to reject valid bid and readvertise procurement contract in order to "recapture the benefit of a lower bid that was properly rejected").  In this case, the MBTA had the opportunity to contract with a new vendor by joining an existing Statewide contract.  Under the Commonwealth's regulations for the procurement of commodities or services, which the MBTA has elected to follow, see 801 Code Mass. Regs. § 21.01(2)(a) (2003), State agencies typically must procure goods and services through a competitive process, but this requirement does not apply when an agency joins a collective purchasing agreement.  See 801 Code Mass. Regs. §§ 21.05(5), 21.06 (1997).

[12] See discussion, infra, concerning consideration provided by the MBTA-Prime contract in the event of termination.

terms of the contract").[13]  Additionally, at least one Federal court has held that, where controlling State law exists, a State court need not look to Federal precedent construing termination for convenience clauses.  See Linan-Faye Constr. Co. v. Housing Auth. of Camden, 49 F.3d 915, 917, 920 (3d Cir. 1995).

In sum, in light of the incompatibility between the Federal standard and our own jurisprudence, we are not persuaded that Federal law should supplant Massachusetts precedent in determining the proper construction of a termination for convenience clause in a State or municipal public procurement contract.  Having concluded that the termination for convenience clause must be construed according to Massachusetts law, we turn to Prime's claims against the MBTA.

c.  Proper construction.  i.  Breach of contract.  Prime alleges that the MBTA's decision to terminate the contract in order to secure a better price or contract terms from another vendor "rendered the competitive bidding process meaningless" and was a breach of the contract.  In order to determine whether

---

[13] See Mb Oil Ltd. Co. v. Albuquerque, 382 P.3d 975, 978-980 (N.M. Ct. App. 2016) (discussing Federal standard and plain contractual language, and declining to state controlling standard); Louis Food Serv. Corp. v. Department of Educ. of the City of New York, 76 A.D.3d 956, 958 (N.Y. 2010) (New York law permits State government agency to exercise rights under termination for convenience clause without judicial inquiry); 4N Int'l, Inc. v. Metropolitan Transit Auth., 56 S.W.3d 860, 861-862 (Tex. Ct. App. 2001) (rejecting Federal standard and applying Texas law).

Prime has alleged sufficient facts to show that the MBTA's termination was impermissible, we analyze the contract according to the principle that "[w]hen contract language is unambiguous, it must be construed according to its plain meaning." Balles v. Babcock Power Inc., 476 Mass. 565, 571-572 (2017).

The language of a contract is unambiguous unless "the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken" (citation omitted). Bank v. Thermo Elemental, Inc., 451 Mass. 638, 648 (2008), and cases cited. The contract at issue vests the MBTA with "sole discretion" to terminate. "Sole discretion" means the "power to make decisions without anyone else's advice or consent." Black's Law Dictionary 565 (10th ed. 2014). See Thomas v. Oregon Fruit Prods. Co., 228 F.3d 991, 994 n.3 (9th Cir. 2000) ("sole discretion" represents "unambiguous grant of discretion"). The words "sole discretion" cannot reasonably be interpreted in multiple ways. See Bank, supra. They clearly permit the MBTA to terminate the contract unilaterally.

The termination provision further provides that the MBTA may terminate the contract "for its convenience and/or for any reason." As we concluded in Morton St., 453 Mass. at 494, quoting the American Heritage Dictionary of the English Language 411 (3d ed. 1996), "'convenience' means the 'quality of being

suitable to one's comfort, purposes, or needs.'" Conserving resources meets an important need. See Morton St., supra at 492, 494 (recognizing "concern about the public fisc" and "many challenging decisions that public officials with considerable obligations and limited resources often need to make, especially during difficult fiscal times, in order to allocate available resources more suitably").

The word "any" is defined as "one, no matter what one: every." Webster's Third New International Dictionary 97 (2002). The phrase "for any reason" thus unambiguously includes the MBTA's reason for termination: achieving cost savings. See Insurance Brokers W. Inc. v. Liquid Outcome LLC., 874 F.3d 294, 298 (1st Cir. 2017); (phrase "for any reason" is unambiguous); Ruiz v. A.B. Chance Co., 234 F.3d 654, 672 (Fed. Cir. 2000) (same). "There is no ambiguity here that would allow a court to search for an intent of the parties not to be held strictly to the plain terms of the contract language." Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 287 (2007).

Prime argues that, under Morton St., only a funding loss or other change of circumstances could justify invocation of a termination for convenience clause, but Morton St. contains no such limitation. Indeed, in that case we concluded that "challenging decisions" forced by budget constraints may motivate a public entity to terminate a contract. See Morton

St., 453 Mass. at 494.  We did not define the full extent of the sheriff's discretion in Morton St., because it clearly encompassed the sheriff's right to end the lease when she lost the financing for that lease.  Id.  The sheriff's circumstances were sufficient, but not necessary, to justify termination for convenience.

The Legislature's decision to create the Fiscal and Management Control Board in order to secure the MBTA's fiscal stability indicates that the MBTA's budget is under pressure.  See St. 2015, c. 46, § 200 (f).  Moreover, the contract language in this case contains a broader authorization of discretion than was at issue in Morton St., 453 Mass. at 486-487.  In that case, the termination provision provided simply that the contract could "be terminated at any time for the convenience of the" sheriff.  Id.  Accordingly, we considered whether the funding loss constituted an inconvenience.  Id. at 494.  Here, by contrast, the contract specifies that the MBTA may terminate "for any reason"; Prime does not allege that the MBTA terminated the contract for no reason at all but, rather, argues that its stated reason is improper.[14]  In sum, Prime has not alleged any impermissible conduct or wrongdoing, aside from its contention

---

[14] As noted, although Prime's complaint asserts that the MBTA incorrectly calculated its potential cost savings, the complaint does not allege that the MBTA's stated reason for terminating the contract concealed another, illegitimate one.

that the MBTA could not terminate the contract in order to secure a lower price.[15]

Finally, construing the termination clause as written does not, as Prime argues, render the contract unenforceable for lack

---

[15] In its brief, Prime suggests that the MBTA's decision to terminate the contract runs afoul of Massachusetts public bidding laws that are aimed at fostering equitable competition. We observe that, as a recipient of Federal assistance, the MBTA both must comply with applicable State law and must ensure that "procurement transactions be conducted in a manner providing full and open competition." 2 C.F.R. §§ 200.318(a), 200.319(a). Prime, however, has alleged no statutory or regulatory violations that occurred during the process by which the contract at issue here, or the Statewide ULSD contract, was awarded. On the facts provided, we have no reason to conclude that these procedures did not comply with applicable law, and, accordingly, must enforce the contract as written. Contrast Phipps Prods. Corp. v. Massachusetts Bay Transp. Auth., 387 Mass. 687, 692 (1982) (contract was unenforceable where MBTA did not comply with statutory public bidding requirements).

To the extent that Prime argues that the contract, construed according to its plain language, is unenforceable as contrary to the public policy of treating bidders fairly and equally, we reject this claim. "'Public policy' in this context refers to a court's conviction, grounded in legislation and precedent, that denying enforcement of a contractual term is necessary to protect some aspect of the public welfare." Feeney v. Dell Inc., 454 Mass. 192, 200 (2009), and cases cited. Although "[w]e have repeatedly stated that the purpose of competitive bidding statutes is not only to ensure that the awarding authority obtain the lowest price among responsible contractors, but also to establish an open and honest procedure for competition for public contracts," Modern Continental Constr. Co. v. Lowell, 391 Mass. 829, 840 (1984), terminating a procurement contract in order to secure a lower price does not conflict with this purpose. If a contract clearly defines the public entity's right to terminate, the bidders are equally on notice of such a possibility. Furthermore, the Legislature has encouraged State agencies to join cooperative purchasing agreements. See G. L. c. 30B, § 23. As explained supra, the MBTA's termination was consistent with this court's precedent.

of consideration.  The contract here bound the MBTA to provide certain valuable consideration to Prime.  See Graphic Arts Finishers, Inc., 357 Mass. at 43 ("The law does not concern itself with the adequacy of consideration; it is enough if it is valuable").  In addition to payment for ULSD, the contract guaranteed Prime thirty days' written notice and reimbursement for certain costs in the event of termination.  See 3 R.A. Lord, Williston on Contracts § 7:13 (4th ed. 2008) (consideration exists when reservation of right to cancel requires written notice).  Compare Torncello, 681 F.2d at 769-770 ("a route of complete escape vitiates any other consideration furnished," where no notice or additional payment was provided).  The MBTA's termination does not render the contract illusory.  See Simons v. American Dry Ginger Ale Co., 335 Mass. 521, 525 (1957) (contract construed as terminable at will on reasonable notice was not illusory prior to termination).  For these reasons, we conclude that Prime has not alleged sufficient facts to state a claim for breach of contract.

    ii.  Breach of the implied covenant of good faith and fair dealing.  Prime's complaint also asserts that the MBTA terminated the contract "in order to undercut the [c]ontract price set through the competitive bidding process, thereby depriving Prime of the fruits of the [c]ontract," and therefore committed a breach of the implied covenant of good faith and

fair dealing.  The MBTA's broad latitude under the contract does not immunize it against such an allegation.  See Robert & Ardis James Found. v. Meyers, 474 Mass. 181, 189 (2016) (covenant of good faith and fair dealing is implied in every contract).

"The covenant of good faith and fair dealing . . . provides 'that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' . . .  'A breach occurs when one party violates the reasonable expectations of the other'" (citations omitted)  Weiler v. PortfolioScope, Inc., 469 Mass. 75, 82 (2014).  "There is no requirement that bad faith be shown; instead, the plaintiff has the burden of proving a lack of good faith. . . .  The lack of good faith can be inferred from the totality of the circumstances."  Robert & Ardis James Found., 474 Mass. at 189, quoting Weiler, supra.  See Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 473-474 (1991) (rejecting argument that, because trial judge did not find "bad faith," he erred in ruling that defendant violated implied covenant of good faith and fair dealing).

Prime has not alleged sufficient facts to show that the MBTA's decision to terminate "injured" its right to "receive the fruits of the contract," which, as discussed, included payment for ULSD delivered, as well as thirty days' written notice and reimbursement for certain costs in the event of termination.

Nor do Prime's allegations state a claim that the MBTA violated its "reasonable expectations." "The plaintiff cannot have misunderstood the broad discretion on the part of" the MBTA. Eigerman, 450 Mass. at 289. "Any expectation otherwise on the plaintiff's part, as [a] matter of contract law, would not be reasonable." Id.[16]

On the facts provided, this is not a case in which one party leveraged its discretion to "recapture opportunities forgone on contracting" or "to refuse 'to pay the expected costs of performance.'" See Anthony's Pier Four, Inc., 411 Mass. at 473, quoting E.A. Farnsworth, Contracts § 7.17 (a), at 329 (1990). Nor has Prime claimed that the MBTA entered into the contractual relationship without intending to continue it for the full term, compare K.G.M. Custom Homes, Inc. v. Prosky, 468 Mass. 247, 254-255 (2014) (party who had no intention of completing contract committed breach of implied covenant of good faith and fair dealing), or asserted that the MBTA's stated reason for terminating the contract concealed an illegitimate

---

[16] Prime contends, in addition, that the obligation of good faith imposed by the Uniform Commercial Code (U.C.C.) is applicable here. For the reasons discussed, the MBTA has not violated this obligation. See G. L. c. 106, § 1-304; Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 72 F.3d 190, 199 & n.3 (1st Cir. 1995), cert. denied, 517 U.S. 1245 (1996) (combining common law and statutory good faith analyses); official comment to U.C.C. § 1-203, 1 U.L.A. 273 (Master ed. 2012) ("This section does not support an independent cause of action for failure to perform or enforce in good faith . . . [and] does not create a separate duty of fairness and reasonableness").

one.  See T.W. Nickerson, Inc. v. Fleet National Bank, 456 Mass. 562, 571 (2010); Fortune v. National Cash Register Co., 373 Mass. 96, 104-105 (1977) (employer acts in bad faith by terminating employee in order to deprive him or her of commission).

Simply put, "the implied covenant of good faith and fair dealing cannot create rights and duties that are not already present in the contractual relationship."  Eigerman, 450 Mass. at 289.  Under the terms of the contract, terminating to obtain a better price, alone, is not a violation of this duty.  Prime has not alleged sufficient facts to prove that the MBTA committed a breach of the implied covenant of good faith and fair dealing.

3.  Conclusion.  We construe the reported question as asking whether the MBTA's motion to dismiss properly was denied. We conclude that the Superior Court judge erred in denying the motion on the ground that a public entity may not invoke a termination for convenience clause in a public procurement contract in order to secure a lower price.  The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.